LYNCH *v.* HAMMOCK, CHANCELLOR.

4-6950                                    165 S. W. 2d 369

Opinion delivered November 2, 1942.

912

*Buzbee, Harrison & Wright,* for petitioner.

*Peter A. Deisch* and *E. E. Hopson,* for respondent.

HOLT, J. August 19, 1942, Dr. R. H. White, president of Desha County Medical Society, filed a petition in the Desha chancery court seeking to enjoin Dr. M. B. Lynch from practicing medicine within the state of Arkansas. On the same day, Dr. Lynch filed answer denying petitioner's right for the injunctive relief prayed. On this same date a hearing was had on the petition and answer, and the trial court issued a temporary restraining order against Dr. Lynch in accordance with the prayer of Dr. White's petition. On the day following this order, August 20, 1942, Dr. Lynch filed in this court petition for writ of prohibition against Honorable E. G. HAMMOCK, chancellor of the Desha chancery court. He alleges in this petition that "the petitioner, Dr. M. B. Lynch, was made party defendant in an action in the Desha chancery court in which Dr. R. H. White, president of the Desha County Medical Society, sought to restrain the petitioner from practicing medicine and on August 19, 1942, a restraining order was en-

tered against this petitioner. The respondent is judge of the court in which said restraining order was issued and is attempting to assert jurisdiction over this defendant in this cause without legal ground.

"The petitioner is a graduate of the University of Tennessee, which is a Grade 'A' Medical School, and has served his interneship in a recognized hospital, Baptist Memorial Hospital of Memphis, Tennessee. He is a duly licensed physician and surgeon in the state of Tennessee and is authorized to practice his profession under the laws of that state.

"The petitioner is engaged exclusively in doing medical first aid work near Rohwer, Desha county, Arkansas, upon employees of Linebarger Senne Construction Company, the contractor for the construction of Rohwer Relocation Colony in Desha county, Arkansas, and upon the employees of the subcontractors and collateral contractors engaged in construction of this project. Linebarger Senne Construction Company, its collateral, its subcontractors and collateral contractors are engaged in the construction of a camp or colony for Japanese evacuees; the work of the contractors and the medical first aid work of your petitioner is being performed exclusively upon lands of the United States of America, over which the state of Arkansas, and its subordinate agencies have no control whatever. In doing his medical first aid work upon the said reservation the petitioner is violating no law of the state of Arkansas and no court of the state of Arkansas possesses jurisdiction to restrain or impede him from carrying on his work exclusively upon said jurisdiction. The construction of the improvements upon the site of the colony is being conducted under the authority of the War Department of the United States of America and is a part of the national war effort. The contract of Linebarger Senne Construction Company is with the United States of America, through the War Department, which said contract requires that a practicing physician and surgeon be present on the reservation for the purpose of rendering medical first aid to said employees and the petitioner is present upon the said reservation solely and exclusively for the purpose of

fulfilling this part of the contract. The petitioner is not practicing medicine and surgery in Desha county, Arkansas, generally, nor in any other of the seventy-four counties of the state of Arkansas. The petitioner does not hold himself out as a practicing physician and surgeon except upon said Government Reservation under the circumstances above set out.

"At the present time there are approximately two thousand employees upon the said Government Reservation engaged in construction, and this large number necessitates the constant attendance of a physician and surgeon for the performance of medical and surgical first aid on injured employees. There are no hospital facilities upon the reservation and all serious cases, after examination by the petitioner, are immediately referred to physicians who are practicing generally in the state of Arkansas and hospitals which are receiving patients generally. The nature of the medical and surgical work of the petitioner is exclusively in fulfillment of the contract of the contractors with United States of America.

"The answer of the defendant to the action filed by Dr. R. H. White as president of the Desha County Medical Society set up substantially all of the facts alleged in this motion, which facts were by the plaintiff admitted to be true. A copy of the said answer is attached hereto, marked Exhibit '1' and is made a part of this petition.

"The petitioner alleges that the Desha chancery court of which respondent, Hon. E. G. HAMMOCK, is chancellor, is without jurisdiction to proceed against the petitioner and unless a temporary writ of prohibition is issued by this court the defendant will be compelled to refrain from the practice of medicine and surgery upon said Government Reservation to his great personal detriment and to the detriment of injured employees upon the project and to the hindrance of the war effort.

"Wherefore, the petitioner prays for a temporary writ of prohibition directed to the Desha chancery court, Hon. E. G. Hammock, Chancellor, prohibiting the said court from proceeding further in the said suit of the Desha County Medical Society, by Dr. R. H. White, pres-

ident, and upon a hearing, the petitioner prays that such writ of prohibition be made permanent.''

Demurrer was interposed to Dr. Lynch's petition for writ of prohibition, by the respondent, and by agreement the matter was heard in vacation before one of the judges of this court, on the petition and demurrer on August 20, 1942, which resulted in a temporary writ of prohibition against respondent, effective until September 28, 1942, when this court reconvened in regular session. On the latter date the cause was submitted on briefs and argued orally before this court. The temporary writ was continued in effect until October 5, 1942. October 5, 1942, this court entered a *per curiam* order making the temporary writ of prohibition permanent.

The cause is before us at this time on respondent's motion for a rehearing. The entire record before us consists of the petition for injunction, the answer thereto, the restraining order of the lower court, the petition for a writ of prohibition by Dr. Lynch against the chancellor of the Desha chancery court, respondent's demurrer to the petition for writ of prohibition, and the order granting temporary writ of prohibition, by one of the members of this court, on August 20, 1942.

Respondent, by demurring to petitioner's petition for a writ of prohibition, admits the truth of every allegation contained in the petition, which is well pleaded. See *Gall* v. *Union Nat'l Bank of Little Rock, Trustee,* 203 Ark. 1000, 159 S. W. 2d 757.

On the record here, the sole question presented is whether a licensed physician of another state, not licensed in Arkansas, who confines his practice to workmen engaged in constructing federal buildings upon property owned by the United States is subject to the laws of Arkansas relating to the practice of medicine and surgery (§§ 10739-10744, Pope's Digest). Respondent contends that Dr. Lynch would be subject to the Arkansas laws, and petitioner argues that he would not be.

The petition alleges, and by his demurrer respondent concedes, that the land on which Dr. M. B. Lynch confined his practice, called the ''Japanese Relocation

Colony," is owned by the United States, title having been acquired by purchase. The state of Arkansas has yielded jurisdiction over the area in question by § 5644, Pope's Digest, which provides: "The state of Arkansas hereby consents to the purchase to be made or heretofore made by the United States, of any site or ground for the erection of any armory, arsenal, fort, fortification, navy yard, customhouse, lighthouse, lock, dam, fish hatcheries, or other public buildings of any kind whatever, and the jurisdiction of this state, within and over all grounds thus purchased by the United States, within the limits of this state, is hereby ceded to the United States. Provided, that this grant of jurisdiction shall not prevent execution of any process of this state, civil or criminal, upon any person who may be on said premises. Act April 29, 1903, p. 364, § 1."

Article 1, § 8, c. 17 of the Constitution of the United States provides that congress shall have power "to exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings; . . ."

We think there can be no doubt that the buildings constructed by the government on its property to be used for the relocation of the Japanese come within the term "other public buildings of any kind whatever" as used in § 5644, *supra,* and under the above provision of the United States constitution as "other needful buildings," in this time of war stress. The Supreme Court of the United States in *Surplus Trading Company* v. *Cook,* 281 U. S. 647, 50 S. Ct. 455, 74 L. Ed. 1091, held that certain blankets located within Camp Pike on land owned by the United States and lying within Pulaski county, Arkansas, (now known as Camp Robinson) were not subject to taxation by this state for the reason that Arkansas had

surrendered and ceded its jurisdiction over the area to the United States, and the court said: "It long has been settled that where lands for such a purpose are purchased by the United States with the consent of the state legislature the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction."

The War Department of the United States by proclamation No. WD 1, issued August 13, 1942, has designated the property in question here as a military area. Section 1 of that order provides: "1. Pursuant to the determination of military necessity hereinbefore set out, all the territory within the established boundaries of . . . Jerome Relocation Project, approximately one mile northeast of Jerome, Arkansas; and Rohwer Relocation Project, adjacent to and west of Rohwer, Arkansas, are hereby established as military areas, and are designated as war relocation project areas."

We think the issue here has been decided against respondent's contention by this court in the very recent case of *Young* v. *G. L. Tarlton, Contractor, Inc., ante,* p. 283, 162 S. W. 2d 477. In that case it was charged that appellees, two Delaware corporations engaged at the time in constructing military buildings for the United States at Camp Robinson, were violating the laws of this state because they had failed to qualify in Arkansas as foreign corporations. This court, however, rejected that contention, saying, "the laws of this state relative to the domestication of foreign corporations have no application for the reason that appellees were engaged in construction work for the United States at a military post under the jurisdiction of the United States."

In the instant case, it is conceded that Dr. Lynch is confining his practice to the area owned by the United States, administering to the employees of the construction company, which is carrying out a contract which it has with United States under the terms of which it is required to keep available a physician to look after the health of these employees while engaged in the construc-

tion work under the contract. We think it clear, under the above authorities, that the laws, *supra,* affecting the practice of medicine and surgery in Arkansas do not control and cannot apply to the rights of Dr. Lynch to practice on property, the jurisdiction over which has been surrendered to the United States, and the title to which property has been acquired by the United States by purchase.

Respondent's motion for a rehearing is denied.