Judith Ann Womack, Chair Board of Examiners in Speech-Language Pathology and Audiology P.O. Box 250345 Little Rock, AR 72225-0345
Dear Ms. Womack:
This is in response to your request for an opinion regarding Act 121 of 1993, which pertains to the authority of the Board of Examiners in Speech-Language Pathology and Audiology ("the Board"). Act 121 has been codified at A.C.A. 17-97-101—308 (Cum. Supp. 1993). You have referred to Op. Att'y Gen. 92-117, which addressed the regulatory authority of the Board pursuant to its previous legislative authority, and you have asked me to clarify certain areas of the Board's authority after the passage of the current legislation. Your questions are set out below and answered in the order posed.
 1. Whether para-educators, assistants or aides to licensed speech-language pathologists and audiologists can provide services to the public or practice speech-language pathology and audiology (under the supervision of the licensed individual) as defined under A.C.A. § 17-97-101 et seq. and Act 121 of 1993 without a valid license issued by the Board under A.C.A. 17-97-301 et seq.
 2. Does the removal of the phrase "and who presents himself to the public" [pursuant to Act 121 of 1993] indicate a legislative intent to eliminate any factual inquiry into a title or description of services rendered? In other words, can A.C.A. 17-97-301 be construed to prohibit the practice of speech-language pathology or audiology in addition to any person representing themselves as a speech-language pathologist or audiologist without a license.
 3. What action, if any, can the board take against an unlicensed para-educator, assistant or aide to a speech-language pathologist or audiologist, assuming they are in violation of A.C.A. 17-97-301, as amended by Section 9 of Act 121 of 1993, or against a licensee who used an unlicensed person to perform speech-language pathology or audiology? May the board now assess civil penalties against unlicensed persons who violate the Act in accordance with Act 121 of 1993,5? May the board seek injunctive relief in court against unlicensed or licensed persons in violation of the Act in accordance with Act 121 of 1993, 5?
 4. Whether para-educators, assistants or aides to speech-language pathologists and audiologists can provide supervised services to the public or practice speech-language pathology or audiology as defined under A.C.A. 17-97-103 as amended by Act 121 of 1993 (see Section 4 of Act 121 of 1993) in any of the following occupational settings:
(a) Public schools
(b) Hospitals
(c) Private or community clinics
(d) Agencies of the state or federal government
 (e) Private, non-profit corporations licensed by Developmental Disability Services of the Department of Human Services
 5. Whether the board has authority under A.C.A. 17-97-101 et seq. to regulate the employment, certification/registration and/or activities or para-educators, assistants, or aides to licensed speech-language pathologists or audiologists, or to create (by rule or regulation) a separate category of licensure for para-educators, assistants, or aides if they do not meet the eligibility requirements as outlined in the Act and the rules and regulations of the board.
You have not specified, with regard to your first question, what "services" the individuals in your question may be performing. You do mention, however, the practice of speech-language pathology and audiology by the individuals. It is my opinion that if such individuals practice speech-language pathology or audiology, as defined in 17-97-103(4) or (6), they are required to be licensed in accordance with the provisions of 17-97-301.
Section 17-97-301(a) states that "[n]o person shall practice or represent himself as a speech-language pathologist or audiologist in this state unless he is licensed in accordance with the provisions of this chapter." "Speech-language pathology" is defined in 17-97-103(4) as "the application of principles, methods, and procedures for the measurement, testing, evaluation, prediction, counseling, instruction, habilitation, or rehabilitation related to the development and disorders of speech, voice, or language for the purpose of evaluating, preventing, ameliorating, or modifying such disorders and conditions in individuals and groups of individuals." Subsection 103(6) defines "audiology" as "the application of principles, methods, and procedures of measurement, testing, evaluation, prediction, consultation, counseling, instruction, habilitation, or rehabilitation related to hearing and disorders of hearing for the purpose of evaluating, identifying, preventing, ameliorating, or modifying such disorders and conditions in individuals and groups of individuals."
There is no exception to this licensure requirement (see17-97-104) for individuals whose title indicates they are merely assisting the pathologist or audiologist, when they are in fact performing services which fall under the definition of the practice of speech-language pathology or audiology.
It is my opinion, with regard to your second question, that the answer is, in all likelihood, "yes."
The first rule in interpreting a statute is to construe it just as it reads by giving words their ordinary and usually accepted meaning. Arkansas Vinegar Co. v. Ashby, 294 Ark. 412,743 S.W.2d 798 (1988); Mountain Home Sch. Dist. v. T.M.J. Builders, Inc.,313 Ark. 661, 858 S.W.2d 74 (1993). And where the language of a statute is plain and unambiguous, we determine the legislative intent from the ordinary meaning of the language used. Mountain Home, supra. Further, it is a recognized principle of interpretation that the mention of one thing implies the exclusion of another. 73 Am.Jur.2d Statutes 211 (1968); see also Sutherland Statutory Construction 47.23 (1992). Ordinarily, there is an inference that omissions are intentional. Id. 47.25 (1992).
Arkansas Code Annotated 17-97-101 to -308 previously appeared to authorize the regulation by the Board only of those individuals who both performed services which constituted the practice of speech-language pathology or audiology and who held themselves out to the public as practicing such. See also Op. Att'y Gen.92-117. The removal by the legislature of the requirement that one "present himself to the public" prior to regulation by the Board under 17-97-101 to -308 appears to evidence an intent to allow regulation by the Board of anyone who performs services which fall under the definition of the practice of speech-language pathology or audiology, regardless of whether she or he holds himself out to the public as such.
It is my opinion, with regard to your third question, that assuming the individuals in your question are performing services which fall under the definition of speech-language pathology or audiology and thus come under the regulatory authority of the Board, the answer is "yes."
Section 17-97-106 allows the Board to assess civil penalties against individuals who violate the provisions of 17-97-101 to -308. Additionally, 17-97-107 allows the Board to seek injunctive relief against persons in violation of the Act.
It is my opinion, with regard to your fourth question, that the individuals in your question may provide the services about which you inquire if they fall within the exemptions to the Board's regulatory authority set out at 17-97-104.
Subsection 104(4) exempts from the regulatory authority of the Board individuals who perform speech-language pathology or audiology services "solely within the confines or under the jurisdiction of a public school system if that person holds a valid and current certificate as a speech therapist or speech-language pathologist issued by the Department of Education." Accordingly, if the individual meets this criteria, the Board may not regulate her or him.
There is no exemption in subsection 104 for hospitals. Accordingly, it is my opinion that if the individuals in your question perform services which meet the definition of the practice of speech-pathology or audiology in a hospital setting, they may be regulated by the Board.
Similarly, there is no exemption in subsection 104 for private or community clinics. Accordingly, again assuming the services meet the definition of the practice of speech pathology or audiology, it is my opinion that the Board may regulate such individuals in private or community clinics.
Subsection 104(7) exempts individuals performing services "solely within the confines of the person's duties as an employee of the State of Arkansas provided that the person was an employee of the State of Arkansas on January 1, 1993" or who "subsequently transfer to another agency of the state." Accordingly, it is my opinion that if the individual was employed with the state on or before January 1, 1993, even if she or he subsequently transfers to another agency of the state, the individual is exempt from the Board's regulatory authority.
The question with regard to employees of federal agencies is not so easily answered. Prior law exempted persons providing services solely by virtue of their federal employment. See former A.C.A.17-97-104(4). The current statute contains no such exemption. It is my understanding that your question refers mainly to veterans' hospitals. It may be concluded, at least with respect to the veterans' hospitals in North Little Rock and Fayetteville, that the Board has regulatory authority. Although the cases of Lynchv. Hammock, 204 Ark. 911, 165 S.W.2d 369 (1942), and Ladwig v.Nance, 223 Ark. 559, 267 S.W.2d 314 (1954), appear to exclude such federal employees from state regulation, each case was careful to point out the ceding of jurisdiction by the state over the federal lands in question. With respect to these veterans' hospitals, however (the ones in North Little Rock and Fayetteville), the federal government has relinquished certain legislative powers to the state. See A.C.A. 22-7-223 and22-7-102(e)(3). It is therefore my opinion that the Board has regulatory authority over individuals providing services on those properties.
With regard to the veterans' hospital located in Little Rock, the issue is unclear. There is no state statute pertaining to the jurisdiction of this property. The state's regulatory authority may depend upon the extent of any ceding of jurisdiction by the state. This issue will therefore require the resolution of factual issues which are beyond the purview of an Attorney General's opinion.
While the former 17-97-104(4) (Repl. 1992) exempted individuals who performed services in private, nonprofit corporations licensed by Developmental Disabilities Services, this provision was not included in the current legislation (Act 121 of 1993). Accordingly, it is my opinion that individuals who perform services which meet the definition of the practice of speech-language pathology or audiology in these settings may be regulated by the Board.
It is my opinion with regard to your fifth question that the Board may regulate the "activities" of the individuals in your question if they perform services which meet the definition of "practice" under the Act. It is also my opinion, however, that there is no authority under the Act for the Board to create a separate category of licensure if individuals do not meet other eligibility requirements.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sherry L. Daves.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh