STATE EX REL., ARKANSAS STATE HIGHWAY COMMISSION *v.* OTTINGER.

5-2113 334 S. W. 2d 694

Opinion delivered April 18, 1960.

*Neill Bohlinger, Dowell Anders, Daniel Parnell,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

J. Seaborn Holt, Associate Justice. This appeal comes from a decree of the Pulaski Chancery Court which granted appellee, E. C. Ottinger's, d/b/a Ottinger Construction Company, prayer for cancellation of its bid for the construction of approximately eight (8) miles of highway in Arkansas, and also for cancellation of its bid bond in amount of $35,0000 which it had procured from appellee, Standard Accident Insurance Company.

The facts are to the following effect: Along with five (5) other contractors, appellee, Ottinger, submitted its sealed bid to appellant, Arkansas State Highway Commission, for construction of eight (8) miles of highway, at 10 o'clock A.M. on May 13, 1959. The six (6) bids were opened formally by the Commission and Ottinger's bid of $1,329,370.58 was announced to be the lowest. The second lowest bid, which was submitted by Reynolds and Williams, totaled $1,611,254.41, or approximately $281,-000.00 more than Ottinger's bid. It also appears that the bid of Reynolds and Williams was only $147,000.00 lower than the highest bid of all, which amounted to $1,758,216.88. Ottinger's bid had been submitted for it by its engineer, Ned B. Turner. When Turner heard over the radio the announcement of the various bids, he was convinced that such a disparity in the Ottinger bid and the others could only be due to some mistake. At 1:30 P.M. on May 13th, within three and one-half hours after the bids were opened, he, Turner, went to Ward Goodman,

chief engineer of the Highway Department, and informed Goodman of the mistake claimed by Ottinger. Goodman referred Turner to the Highway Commission which was then in session. About three hours later, at approximately 4:30 P.M., Turner appeared before the Commission, informed it of a mistake in Ottinger's bid and asked for permission to withdraw his employer's bid. At this time no award of contract by the Commission had been made on the bid. Two days later, on May 15, 1959, Ottinger telegraphed the Commission requesting that his bid be disregarded on the ground that it had made a mistake in computing the bid and this telegram was confirmed by letter by Ottinger to the Commission on May 16th. On May 18th, five days after the bids were opened and after appellant had been informed of Ottinger's request to withdraw its bid, appellant communicated to Ottinger by letter that the contract had been "tentatively" awarded to it, and within ten days of this notice, appellant, Commission, forwarded a contract to Ottinger which it refused to sign. Upon Ottinger's refusal to accept the contract, it was immediately given to the second lowest bidder, Reynolds and Williams.

The chancellor found that: "The contractor's mistake occurred when he overlooked this revision of the Special Provisions furnished by the State Highway Commission, which consisted of a single sheet revision of Sp-105 of Embankment Material. Through failure to observe this revision, which was an unnumbered single sheet among approximately 310 sheets embodying the Provisions applicable to this job, Ottinger bid 43¢ per cubic yard for 753,050 yards of embankment material when he should have bid 83¢ per cubic yard therefor. In the haste and pressure of working up the detailed bid, this mistake amounted to an error in computation of $294,020.00. The result of the mistake made Ottinger's bid approximately $300,000.00 lower than that of the next bidder."

For reversal, appellant relies on two points. (1) If a mistake was made, the cause thereof was appellee's

own negligence, and equity will not relieve it of the consequences of a unilateral mistake caused by negligence. (2) The Arkansas State Highway Commission, by accepting Ottinger's low bid, had the legal right to forfeit the proposal bond if Ottinger refused to enter into a contract to construct the road, and it was error for the court to restrain the Commission from forfeiting the said bond.

We are confronted here with the situation where a contractor makes a material mistake in the preparation of his bid and with the question whether, because of his unilateral mistake, he was entitled to rescind his bid. We think the trial court was correct in holding that he was entitled to rescind his bid.

It is undisputed here that immediately after discovery of the mistake, before any award of the contract and within a matter of hours after the bids were opened, Turner met with the Commission, explained the mistake, and asked that the bid be not considered. At this time, as indicated, Ottinger's bid had not been accepted nor had any of the other bids been rejected. Appellant had in no manner changed its position because of the mistake. The rule granting relief to a contractor for a unilateral mistake, in circumstances similar to what we have here, is announced by the annotator in 52 A. L. R. 2d at page 796. After reviewing a number of cases, he summarizes his findings in this language: "In the typical situation here presented, so firmly has the rule favoring equitable relief against unilateral mistake become established that no case has been discovered in which it has not been granted, by way of rescission or similar or appropriate relief, where there is proof of a combination of circumstances establishing remedial mistake and timely communication of knowledge to and assertion of the right to relief against the other party."

In the case of *Conduit & Foundation Corporation* v. *Atlantic City*, 2 N. J. Super. 433, 64 A. 2d 382 (1949), under a fact situation similar, in effect, to the present case, the Superior Court of New Jersey, Chancery Divi-

sion, used this language: "The essential conditions to such relief by way of rescission for mistake are (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain. * * *

"It becomes important to determine whether the plaintiff promptly rescinded its option given to the defendant or, otherwise stated, whether it rescinded a unilateral contract, and whether the defendant's conduct was conscionable. From the facts as above set forth, which are uncontroverted, it appears that before the defendant had accepted the offer of the plaintiff, the plaintiff apprised it of the error and withdrew its offer or option. This, in effect, was a rescission of the option. Both notice of the error and advice of the rescission were promptly given to the defendant prior to the awarding of the contract to the plaintiff. * * *

"Therefore, it is held that a unilateral mistake existed in the preparation of the plaintiff's bid and that under the facts here present, such bid was promptly rescinded within time.

"It is further held that under the facts here present the plaintiff is entitled to the return of the money deposited with its bid."

In Williston, Contracts, Vol. 5, § 1573 (Rev. Ed.), the author says: "In two classes of cases mistake of one party only to a contract undoubtedly justifies affirmative relief as distinguished from a mere denial to enforce the contract specifically against him: (1) Where the mistake was known to the other party to the transaction * * *. The first of these rules is based on obvious justice;" and in § 1578, "As to other cases

than those referred to in a preceding section, the expressions are numerous that mistake, in order to justify relief, must be mutual or the error of one party must be known to the other. That this is true of reformation is nowhere doubted; but some cases afford countenance for the doctrine that unilateral mistake, while the contract is still executory and the parties can be put *in statu quo*, may afford ground for rescission, and doubtless the discretionary remedy of specific performance may be denied. Rescission has been most frequently sought where a price was bid which because of erroneous arithmetical processes or by the omission of items was based on a mistake. Relief has been allowed in several cases of this and other kinds, though denied in others. In some of them at least, it would seem that the party not in error should have suspected the existence of a mistake in which case clearly rescission and restitution should be allowed. Where relief is allowed it is generally said to be essential that the party seeking it shall not have been guilty of negligence.''

We also hold that the trial court was correct in holding that Ottinger was excused from the forfeiture of its bid bond. In *M. F. Kemper Construction Co.* v. *Los Angeles*, 37 Cal. 2d 696, 235 P. 2d 7 (1951), wherein the facts are strikingly similar to the facts in the present case, that court, in holding that the contractor should be excused from forfeiture of his bid bond, used this language: ''There is no merit in the city's contention that, even assuming the company is entitled to cancellation of the bid and is not liable for breach of contract, the bid bond should nevertheless be enforced because the company failed to enter into a written contract. It is argued that forfeiture of the bond is provided for by charter and that equity cannot relieve from a statutory forfeiture. We do not agree however that the city charter should be construed as requiring forfeiture of bid bonds in situations where the bidder has a legal excuse for refusing to enter into a formal written contract. Under such circumstances the contingency which would give rise to a forfeiture has not occurred. * * * In line

with the general policy of construing against forfeiture where ever possible, decisions from other jurisdictions permitting rescission of bids uniformly excuse the contractors from similar provisions relating to forfeiture of bid bonds or deposits." (Citing many cases)

Finding no error, the decree is affirmed.