MOUNTAIN HOME SCHOOL DISTRICT NO. 9 *v.*
T.M.J. BUILDERS, INC., AND AMERICAN
INSURANCE COMPANY

93-186                                      858 S.W.2d 74

Supreme Court of Arkansas
Opinion delivered July 5, 1993
[Rehearing denied September 13, 1993.]

*H. David Blair*, for appellant.

*Hardin & Grace, P.A.*, for appellee.

Steele Hays, Justice. This is a second appeal and our jurisdiction attaches pursuant to Ark. Sup. Ct. R. 1-2(a)(11). Additionally a question of the construction of Ark. Stat. Ann. § 14-114 (Repl. 1979) is involved. Ark. Sup. Ct. R. 1-2(a)(3).

Mountain Home School District No. 9 (District) brought this suit against T.M.J. Builders, Inc. (T.M.J.), and American Insurance Company (American), appellees, to enforce a bid bond posted by T.M.J. for the construction of a junior high school at Mountain Home. American executed a surety bond accompanying the bid of T.M.J.

Prior to September 12, 1985, the District gave notice that it would accept bids for the construction of a new school building. Construction plans were sent to T.M.J. by architects for the District and on September 19, 1985, T.M.J. submitted a sealed

bid on the project along with other bidders. The bids were opened at a public meeting and T.M.J.'s bid was the lowest of four bids at $2,053,570.

On the evening of September 19 T.M.J. discovered an error in its computations: in estimating the cost of 804 squares of roofing, T.M.J. had used a multiplier of $15 per square instead of an intended multiplier of $115 per square. On the following day T.M.J. informed the District's architect of the error and asked that its bid be withdrawn or that it be allowed to submit an amended bid. That request was denied and on September 26 the Board met and voted to accept the bid of T.M.J. On October 15 T.M.J. informed the District that it would not proceed on the basis of its original bid and tendered a substituted bid using corrected figures. The District refused the alteration and entered into a negotiated contract with M.C. White Construction Company, the next lowest bidder. T.M.J.'s original bid was $85,728 less than the contract with White.

An action was filed by the District in the Baxter County Circuit Court against T.M.J. and American for damages of $85,728, plus interest, 12% penalty and attorney's fees. A jury was waived and the case was submitted on a stipulation of facts and while thus pending T.M.J. moved to transfer to equity to enable it to plead for equitable rescission. That motion was denied and judgments for $85,728, with interest, penalty and attorneys fees were awarded. On appeal, this court reversed, holding that it was error not to transfer the case to equity. *See American Ins. Co. v. Mountain Home School District No. 9*, 300 Ark. 547, 780 S.W.2d 557 (1989).

On remand the case was transferred to the Baxter Chancery Court. Following a trial the chancellor found that T.M.J. was not entitled to equitable rescission but that the District sustained no damages by reason of T.J.J.'s breach. The District has appealed and T.M.J. and American have cross-appealed. We reverse on direct appeal.

■ The District urges that the chancellor erroneously construed the terms of the bond and the measure of damages mandated by Ark. Code Ann. § 9-11-403 (1987) (formerly Ark. Stat. Ann. § 14-114). Although we review chancery cases de novo, we will not set aside a chancellor's findings of fact unless

clearly erroneous. *Nunley* v. *Orsburn,* 312 Ark. 147, 847 S.W.2d 702 (1993). We also recognize the chancellor's superior position in weighing issues of credibility. *Brown* v. *City of Stuttgart*, 312 Ark. 97, 847 S.W.2d 710 (1993).

This case hinges on statutory interpretation. The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Bob Cole Bail Bonds, Inc.* v. *Howard*, 307 Ark. 242, 819 S.W.2d 274 (1991). The basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the legislature. *American Casualty Co.* v. *Mason*, 312 Ark. 166, 847 S.W.2d 392 (1993). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Roy* v. *Farmers & Merchants Ins. Co.*, 307 Ark. 213, 819 S.W.2d 2 (1991).

Because the transaction in this case occurred in 1985 — prior to the adoption of Arkansas Code of 1987 — the controlling statute is Ark. Stat. Ann. § 14-114. That statute, as amended, now appears as Ark. Code Ann. § 19-11-403 (Supp. 1991). Ark. Stat. Ann. § 14-114 provided as follows:

Every bid shall be absolutely void which is not accompanied by a written bid or proposal bond of a responsible surety. Such bond shall indemnify the public against failure of the contractor to execute and deliver the contract and necessary bonds for faithful performance of the contract. The bond shall be conditioned upon the prompt payment of labor and material furnished in the prosecution of the contract, and shall provide that the contractor or surety must pay the damage, loss, cost, and expense subject to the amount of the bid bond directly arising out of the contractor's default in failing to execute and deliver the contract and bonds. Liability under this bond shall include, but shall not be limited to the sum by which the amount of the contract, covering the proposal, executed with another third party may exceed the amount bid by the contractor.

The bid bond read as follows:

[T]he principle [T.M.J.] shall pay to the obligee [Appellant] the difference not to exceed the penalty hereof between the amount specified in said bid and such larger amount for which the obligee may in good faith contract with another party to perform the work covered by said bond.

The District contends the language of the statute and the bid bond require the court to determine liability as of the time of the alleged breach instead of at some subsequent time, i.e., prospectively instead of retrospectively. It insists it was error to compare the amount which would have been payable under a contract as bid with the amount ultimately paid under the contract with M.C. White Construction Company.

This issue arises because the amount the District ultimately paid for the construction under its contract with White differed from the amount of the contract due to certain unit price provisions related to payment for rock excavation, the extent of which could not be determined at the time of contracting. By its proposal for a lump sum contract, T.M.J. agreed to perform certain work for the sum of $2,053,570.00. After T.M.J. refused to enter into the contract, the District contracted with White for the same work for a lump sum of $2,139,298.00, which was $85,728.00 greater than that bid by T.M.J. Both T.M.J.'s bid and the contract with White provided that there would be additions or deductions as later determined by contingencies encountered during the performance of the work.

One of the contingencies of the contract was for additional payment based on the excavation of rock, defined in the contract documents as "each cubic yard of rock the size of one-half cubic yard or larger," removal of which was necessitated by the performance of the work. T.M.J.'s bid for rock removal was $300.00 per cubic yard, while White's contract for rock removal was $100.00 per cubic yard. When the work was performed, it was found that the excavation of 638.97 cubic yards of rock was required. Hence, if the District had contracted with T.M.J. on the basis of its bid, it would have paid the base price of $2,053,570.00 plus $191,691.00 for rock removal, for a total of $2,245,261.00. Instead, the same work was done by White for $2,139,298.00, plus $63,897.00 for rock removal, for a total of $2,203,195.00.

Therefore, the District's outlay was $42,066.00 less under the contract with White.

In resolving whether liability under a bid bond is to be determined prospectively or retrospectively, the District advises us of the purpose for which the bond is given: to preserve the integrity of the sealed bidding procedure and to assure the bidders will honor their bids. The District also reminds us that sealed bids are deemed irrevocable once they are opened. *See Bailey* v. *Carter*, 211 Ark. 369, 200 S.W.2d 313 (1947). Therefore, the District insists the defaulting party's liability should be determined by comparing the amount of the bid and the amount of the contract rather than an after-the-fact reconstruction of what would have been paid had a contract been executed in accordance with the bid. The District maintains the issue to be determined in the present case is the liability for defaulting upon *the bid,* not the liability for breach of a construction contract.

Appellees contend that Ark. Stat. Ann. § 14-114 is not applicable in this case. Instead, T.M.J. claims that Ark. Code Ann. § 22-9-203 (1987), which concerns public improvements and specifically covers contracts for improvements to school districts, is the applicable statute. In support of its argument, appellees cite *Conway Corp.* v. *Construction Engineers, Inc.*, 300 Ark. 225, 782 S.W.2d 36 (1989), cert. denied 494 U.S. 1080, 110 S. Ct. 1809, 108 L. Ed. 2d 939 (1990), where we held the bidding process for the construction of a water treatment plant was subject to Ark. Code Ann. § 22-9-203 as opposed to §§ 19-11-401 through 405. However, the applicability of § 22-9-203 was not raised by the appellees before the chancellor. *See Mercedes-Benz Credit Corp.* v. *Morgan*, 312 Ark. 225, 850 S.W.2d 297 (1993); *Lynch* v. *Blagg*, 312 Ark. 80, 847 S.W.2d 32 (1993); *Moorman* v. *Lynch*, 310 Ark. 525, 837 S.W.2d 886 (1992). In its complaint, the District specifically pleaded Ark. Stat. § 14-114 as the measure of T.M.J.'s liability. T.M.J. did not question the application of § 14-114, not did it plead or argue that Ark. Code Ann. § 22-9-203 [formerly Ark. Stat. §§ 14-611, 14-612 (1947)] controlled.

Even if the applicability of Ark. Code Ann. § 22-9-203 were preserved, the two statutes are not contradictory. Unless the statutes, both relating to the same subject, are

contrary and cannot be reconciled, they must be read together, and each is to be given its intended effect. *Kansas City So. Ry. Co. v. Pledger*, 301 Ark. 564, 785 S.W.2d 462 (1990). Ark. Code Ann. § 22-9-203 sets forth procedures to be followed in advertising, evaluating, and acting upon bids for specified improvements. Although it does not address any requirements pertaining to bid bonds or the liability thereunder, it does inferentially require that a bid bond be posted and that the required notice must specify the amount thereof, expressed in percentage of the penal sum. However, Ark. Stat. Ann. § 14-114 addresses the requirements of bid bonds in connection with bids upon public construction contracts and defines the conditions of the bond, surety requirements, and liability under the bond. The two provisions are consistent and can be read together.

The bond itself specifically provided that T.M.J. would pay the District the difference between the amount specified in the bid and a larger amount which the District may in good faith contract with another party. The statute specifically states that liability under the bond shall include, but not be limited to, the sum by which the amount of the contract executed with a third party may exceed the amount bid by the contractor. In strictly construing the language of the statute and the bid bond, the intent seems clear that T.M.J.'s liability to the District is determined by the difference between the amount bid and the amount of the contract entered into with White.

For its cross-appeal, T.M.J. argues that the chancellor was right for the wrong reason and should be affirmed. It is well settled that we will affirm the trial court if it reached the right result, even though it may have announced the wrong reason. *See Bushong v. Garman Co.*, 311 Ark. 228, 843 S.W.2d 807 (1992); *Summers Chevrolet, Inc. v. Yell County*, 310 Ark. 1, 832 S.W.2d 486 (1992); *Urrey Ceramic Tile Co. v. Mosley*, 304 Ark. 711, 805 S.W.2d 54 (1991).

T.M.J. notes that its main contention throughout the trial was that it was entitled to equitable rescission because of its unilateral mistake under the principles enunciated in *State Ex. Rel., Arkansas State Highway Commission v. Ottinger*, 232 Ark. 35, 334 S.W.2d 694 (1960). In *Ottinger*, the court discussed the essential conditions for obtaining rescission for unilateral

mistake. They are as follows:

      1. the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable;

      2. the matter as to which the mistake was made must relate to a material feature of the contract;

      3. the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake; and

      4. it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain.

      Under the circumstances, the trial court's findings that T.M.J. had not proven requirements No. 1 and 3 above was not clearly erroneous. Under requirement No. 1, the mistake was not of such magnitude as to render enforcement of the contract unconscionable. The proof shows that T.M.J. was doing about $5,000,000.00 in business annually at this time and that its net worth was more than $80,000.00. T.M.J.'s president testified that to perform the contract would have put the company out of business. However, the error involved the sum of $80,400.00, or 3.9% of the total bid. In contrast, the error in *Ottinger* was 22.7% of the total bid, amounting to $294,020 in 1960 dollars. We are satisfied the chancellor correctly weighed the evidence and determined that the magnitude of the error did not attain a level of unconscionability.

      Under the third element, T.M.J. did not show the mistake occurred notwithstanding the exercise of reasonable care by T.M.J. There was evidence that calls were being made at the last minute relating to the subcontractor's prices on the bid reflecting hasty preparation of the bid. T.M.J. did not offer any evidence that its mathematical calculations of its bid were checked before the bid was submitted. The apparent flurry of last minute activity and the lack of proof as to precautions in preparing the bid demonstrate that ordinary care was not used.

      Based on T.M.J.'s failure to meet its burden of proof on two of the four elements set forth in *Ottinger*, the chancellor

was correct in finding that T.M.J. did not establish grounds for rescission.

For the reasons stated, the decree is reversed on direct appeal and remanded for the entry of a judgment against T.M.J. and American, jointly and severally, in the sum of $85,728, with prejudgment interest, and to determine the District's entitlement to further relief afforded pursuant to Ark. Code Ann. § 23-79-208 (Repl. 1992).

Reversed and remanded.