The Honorable Gus Wingfield Auditor of State 230 State Capitol Little Rock, Arkansas 72201
Dear Mr. Wingfield:
This is in response to your request for an opinion on whether A.C.A. §18-28-220(c) (Cum. Supp. 1993) prohibits you from entering into certain agreements intended to aid in your administration of Act 256 of 1979, the Uniform Disposition of Unclaimed Property Act, A.C.A. §§ 18-28-201 to 18-28-233 (1987 and Cum. Supp. 1993).
Your request sets forth the following factual background:
 This office has an agreement with two (2) out of state firms to identify, process records and collect from persons, firms and entities which are holding or in possession of Unclaimed Property subject to Act 256 of 1979. We now pay these firms a fee of 10% of the value of the abandoned property they collect. We also pay a custodial bank 6% to hold and transmit this property to the Auditor's Office. These fees are deducted from the value of the property prior to being transmitted. Both of these firms have merged with their custodial bank and have sent new agreements with a total fee of 12%.
As indicated above, you have requested an opinion on whether A.C.A. §18-28-220(c) prohibits your entry into the described agreements.
Arkansas Code Annotated § 18-28-220(c) provides as follows:
 The Auditor of State shall not consider any claim filed under this subchapter where a finder has charged a fee of over ten percent (10%) of the total amount of the claim.
"Finders" is defined in A.C.A. § 18-28-201(11) as "parties engaged in locating unclaimed property for a fee of not more than ten percent (10%) of the value of the unclaimed property."
Not having the provisions of the contemplated agreements and all of the relevant facts before me, it is impossible for me to render a conclusive opinion on whether or not the agreements may be entered into without violating A.C.A. § 18-28-220(c). As discussed below, this determination is essentially one of fact rather than law. It is my opinion, however, that A.C.A. §§ 18-28-201(11) and 18-28-220(c) operate to prohibit the Auditor of State from entering into any agreement that provides, in fact, for compensation for the service of locating unclaimed property, in amounts of more than ten percent of the sums collected.
In construing statutes, the fundamental rule is to give effect to the intent of the legislature. Holt v. City of Maumelle, 302 Ark. 51,786 S.W.2d 581 (1990). Legislative intent is determined from the plain meaning of the words used in the statute where those words are plain and unambiguous. Mountain Home School Dist. No. 9 v. T.M.J. Builders, Inc.,313 Ark. 661, 858 S.W.2d 74 (1993). A court may not resort to a subtle or forced construction in order to limit or extend a statute's application when the language used is clear. City of North Little Rock v.Montgomery, 261 Ark. 16, 546 S.W.2d 154 (1977). Here, it appears that the principal legislative purposes behind A.C.A. § 18-28-220(c) were to protect owners of unclaimed property from overreaching by finders under contract with owners, and to preserve the Unclaimed Property Proceeds Trust Fund from depletion through the Auditor's payment of excessive fees.
At any rate, the definition of "finders" in A.C.A. § 18-28-201(11) is plain and unambiguous. It is clear that anyone engaged in locating unclaimed property for a fee is included, regardless of whether such person is paid by the owner of the property or by some other person, such as the Auditor of State.
Because a person under contract with the Auditor to locate unclaimed property is a finder, any fee paid for such service is subject to the ten percent limitation stated in A.C.A. § 18-28-220(c). If a finder's fee in excess of ten percent is paid by the Auditor, he is bound by statute to reject the owner's claim. A.C.A. § 18-28-220(c). It cannot have been the intent of the legislature to permit the rejection of an owner's claim solely because of the Auditor's payment of a finder's fee in excess of the ten percent limit. The Auditor, accordingly, may not contract for the payment of a fee in excess of ten percent.
While finder's fee payments by the Auditor are subject to the ten percent limit, it is also my opinion that the Auditor may lawfully incur other expenses in connection with his administration and enforcement of the Uniform Disposition of Unclaimed Property Act and that such other expenses need not be aggregated with fees paid for locating unclaimed property for purposes of determining whether the ten percent limit has been exceeded. Arkansas Code Annotated § 18-28-218(b) (Cum. Supp. 1993) requires the Auditor to withdraw from the Unclaimed Property Proceeds Trust Fund "an amount necessary to reimburse the State Central Services Fund . . . for moneys expended for personal services and operating expenses of administering and enforcing" the Act. This provision is a clear statement of the authority of the Auditor to incur expenses in administering the Act.
The Act does not expressly state that only those fees actually paid to a finder for the service of locating unclaimed property are included in determining whether the ten percent limit has been exceeded. In my view, however, that is the only reasonable way to interpret the Act. If all fees paid by the Auditor to "finders," regardless of the service for which they are paid, were aggregated for purposes of determining whether the ten percent limit has been exceeded, the Auditor could be prohibited from paying a finder for another service but would be permitted to pay a person who does not meet the definition of "finder" for the identical service, without limitation on amount. For example, assume the Auditor has contracted with a finder, as defined, to locate property for a fee of ten percent, and that he now desires to contract for a separate service, such as records processing. In that case, under the interpretation I reject, the Auditor would be unable to contract with the finder for such service (the ten percent limit already having been reached), while he would be permitted to contract with a person who is not a finder, as defined in the Act, for the identical service without any limitation on the amount of compensation, since the ten percent limit applies only to finders.
Whether a fee paid to a finder in excess of ten percent is a fee for locating unclaimed property is obviously a question of fact, to be determined by reference to all the relevant facts and circumstances. For that reason, I am unable to make that determination with respect to the specific agreements contemplated. In my view, however, a court faced with the question likely would consider, among other things, (a) whether the contract at issue imposes a separate fee for each service; (b) whether the finder is paid for performing the non-finding services even if he locates no unclaimed property (to the extent, if any, such services are required if no property is found); (c) whether the finder is paid for performing the non-finding services on the basis of the amount of unclaimed property located, or on some other basis; (d) whether there exist persons engaged in contracting for the provision of only the non-finder services and, if so, the amounts of compensation commonly paid for such services compared to the amounts payable under the contract with the finder; and (e) the customary contractual treatment of these and similar matters in finders' contracts in states that have no limit on finder's fees. I trust the above discussion is helpful to you in determining an appropriate course of action.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh