Sandra Kay BISHOP *v.* James R. BISHOP

CA 97-23                                                    961 S.W.2d 770

Court of Appeals of Arkansas
Division II
Opinion delivered January 28, 1998

*Anne Orsi Smith,* for appellant.

*Ramsay, Bridgforth, Harrelson & Starling*, by: Rosalind M. Mouser, for appellee.

D. FRANKLIN AREY, III, Judge. This is a divorce case. Sandra Bishop appeals from the Jefferson County Chancery Court's decree finding that a certificate of deposit account amounting to approximately $37,000 did not belong to the parties because it had been given to their son, and from the denial of her motion to set aside the parties' property settlement agreement. We find no error and affirm.

After almost thirty years of marriage, the parties separated in January 1995. Later that year the appellee, James Bishop, filed for divorce. The parties' only child, J.R. "Ricky" Bishop, Jr., was an adult at the time of the divorce. Appellee worked for International Paper Company for the entire length of the marriage and acquired rights to a retirement pension there. Appellant did not work during the marriage. The parties owned, among other assets, a home on which there was no debt and several bank accounts.

One of these accounts was a certificate of deposit account held in the names of Ricky Bishop and appellee, under Ricky's social security number. This account was set up when Ricky was fourteen and was funded by the parties. Even though Ricky paid taxes on the earnings from this account, it is undisputed that the parties reimbursed him. The sole withdrawal from the CD account occurred in 1987 when the parties purchased a van. Appellee was the only person who monitored the activity in this account. The bank statements from this account came to the parties' residence until appellee changed the address to a post office box at a time when the parties were having marital difficulties. Appellee later changed the address back to that of the parties' residence, but changed it to Ricky's address when it became apparent to appellee that divorce was imminent.

At trial, appellant contended that the certificate of deposit account belonged to the parties and that she was entitled to have her half of this account charged off against appellee's portion of the marital assets. Appellant testified that the parties had simply placed the money into an account in their son's name to lessen

their tax burden, and that appellee kept control of this account throughout their marriage. She contended that appellee decided to give this money to Ricky because the parties were separated and because appellee, who was living with Ricky at the time, wanted to conceal this asset from her.

Appellee responded that these funds were no longer marital property because a valid *inter vivos* gift had been completed to Ricky. Appellee testified that on January 5, 1995, Ricky cashed in the CD account in his presence and deposited the money into a new account at Simmons Bank in Ricky's name. He stated that his (appellee's) name is on the account only as the designated beneficiary in the event of Ricky's death. Ricky admitted at trial that he had never accessed the CD account until January 1995. He also testified that, although appellee is listed as a beneficiary, he is not an owner of the new account.

At trial, the parties agreed upon every issue except the ownership of the CD account and entered into a stipulated property settlement agreement, which was read into the record. At the conclusion of the reading of the stipulation, appellant's attorney asked appellant if there was anything that they had not covered. Appellant affirmed that she had no further questions, agreed to the stipulation, and wanted the court to approve it. Appellee likewise stated that he understood the stipulation and agreed to it.

Before the divorce decree was entered, appellant filed a motion to set aside the property settlement agreement on the ground that she had been misinformed as to the retirement benefits to which she was entitled. At the hearing on the motion to set aside the agreement, appellant testified that her attorney had erroneously informed her that, if appellee did not survive, appellant would not receive anything from his pension plan. Appellant contended that she had opted to accept the house instead of any interest in appellee's retirement plan in reliance upon her attorney's incorrect advice. Appellant's father corroborated appellant's testimony.

Appellant's former attorney testified that, as a package deal, appellant had agreed to give up any interest in appellee's retirement account in order to receive the marital residence. He stated

that he had informed appellant that her interest in appellee's retirement account would terminate if Mr. Bishop died first and a joint and survivor benefit had not been designated. He stated that he told her that if a joint and survivor election was made, there would be a reduction in the monthly benefit, but he was not sure how appellee's death would affect it. He stated that they had gone over this subject for quite some time and in more than one discussion, and that Mrs. Bishop had made her decision in consultation with several members of her family. He stated that he had been uncertain about the effect appellee's death would have on appellant's benefits, and that this was taken into consideration when she decided to keep the house in lieu of an interest in appellee's retirement plan.

At the conclusion of the hearing, the chancellor stated that appellant had offered no credible proof that she received any inaccurate information from her former attorney. He found that the agreement was fair and equitable and held that he would enforce it. The chancellor then entered the divorce decree in which he found that the CD account did not belong to the parties and entered an order denying appellant's motion to set aside the property settlement agreement.

In her first point on appeal, appellant argues that the evidence does not support the chancellor's finding that appellee made an *inter vivos* gift of the CD account to Ricky. The requirements for an effective *inter vivos* gift are: an actual delivery of the subject matter of the gift to the donee with a clear intent to make an immediate, unconditional, and final gift beyond recall, accompanied by an unconditional release by the donor of all future dominion and control over the property so delivered. *Chalmers v. Chalmers*, 327 Ark. 141, 937 S.W.2d 171 (1997). These elements must be established by clear and convincing proof in order for an *inter vivos* gift to be sustained. *Jamison v. Estate of Goodlett*, 56 Ark. App. 71, 938 S.W.2d 865 (1997). Clear and convincing evidence is evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details is exact and in due order, and whose testimony is so direct, weighty, and convincing as to enable the fact-finder to come to a clear conviction, without hesitance, of the truth of the facts related. *First Nat'l*

*Bank v. Rush*, 30 Ark. App. 272, 785 S.W.2d 474 (1990). This court's test on review is not whether it is convinced that there was clear and convincing evidence to support the trial judge's finding but whether it can say that the finding is clearly erroneous. *Id.* A requirement that the evidence be clear and convincing does not mean that the evidence must be uncontradicted. *O'Flarity v. O'Flarity*, 42 Ark. App. 5, 852 S.W.2d 150 (1993). Even where the burden of proof is by clear and convincing evidence, this court defers to the superior position of the chancellor to evaluate the evidence. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996).

■ ■ The gravamen of delivery is a showing of an act or acts on the part of the putative donor displaying an intention or purpose to part with dominion over the object of the gift and to confer it on some other person. *Chalmers v. Chalmers, supra.* Intention to give, by itself, is not sufficient; there must be a delivery to consummate the gift and to pass title. *Id.* The decisive factor is whether the putative donor has the power to reclaim the property. *Id. Accord Swaffar v. Swaffar*, 327 Ark. 235, 938 S.W.2d 552 (1997); *Gibson v. Boling*, 274 Ark. 53, 622 S.W.2d 180 (1981); *Hudson v. Bradley*, 176 Ark. 853, 4 S.W.2d 534 (1928). Although the rule with respect to delivery of gifts is less strictly applied to transactions between members of a family, delivery must occur for a gift to be effective. *Chalmers v. Chalmers, supra.*

> There can be no doubt that a certificate of deposit may be the subject of a gift *inter vivos*. We have stated that a promissory note, or any chose in action or other evidence of debt, may be the subject of a gift *inter vivos* and that a certificate of deposit falls into this category. *Boling v. Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979). Likewise, there can be no doubt that the requirements of intent and delivery apply to an *inter vivos* gift of a certificate of deposit. We have also stated that in order to constitute a valid gift of a certificate of deposit, there must be an intent by the donor that title pass immediately, and a delivery of the certificate. *Id.*

*Irvin v. Jones*, 310 Ark. 114, 118, 832 S.W.2d 827, 828-29 (1992).

■ We cannot say that the chancellor's finding that the parties made a gift of the CD account to Ricky is clearly erroneous. The account was established in Ricky's name, using his social security number. Ricky paid taxes on the account's earnings, which further indicates his parents' intent to give the funds to him. There is evidence that the delivery of this account was completed in January 1995 when Ricky cashed it. We cannot say that the chancellor erred in refusing to charge off an amount equal to half of this account against appellee's property.

In her second point on appeal, appellant argues that the chancellor erred in refusing to set aside the property settlement agreement due to her unilateral mistake. Citing *Mountain Home School District No. 9 v. T.M.J. Builders, Inc.*, 313 Ark. 661, 858 S.W.2d 74 (1993), appellant claims that she is entitled to rescission or reformation of the agreement due to her unilateral mistake. The conditions essential for obtaining rescission due to a unilateral mistake were set forth in that case as follows: (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to a material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake; and (4) the party seeking it must be able to get relief by way of rescission without serious prejudice to the other party, except for the loss of his bargain.

The rule applied in *T.M.J. Builders* originates from *State ex rel. Arkansas State Highway Commission v. Ottinger*, 232 Ark. 35, 334 S.W.2d 694 (1960). In both cases a contractor discovered a mistake in its bid prior to formal acceptance of the bid. In *Ottinger*, our supreme court stressed the contractor's attempt to withdraw its bid "before any award of the contract and within a matter of hours after the bids were opened. . . ." *Ottinger*, 232 Ark. at 37, 334 S.W.2d at 695. No other bids had been rejected. *Id.* In both cases, the other party did not recognize the withdrawal, and formally accepted the bid. In *Ottinger*, the chancellor found that the contractor had proven his entitlement to rescission, and the supreme court affirmed; in *T.M.J. Builders*, the chancellor found

that the contractor had not proven entitlement to rescission, and the supreme court affirmed.

■ The case before us differs from *Ottinger* and *T.M.J. Builders*. It does not involve an attempt to withdraw a bid prior to its acceptance. Instead, appellant's attempt to set aside the settlement agreement arose *after* appellant and appellee entered into a binding contract. "[W]hen a stipulation dictated into open court covers all the rights and liabilities of the parties in a total and complete agreement, it will have the full force and effect of a binding agreement, and it will not be modifiable." *Kunz v. Jarnigan*, 25 Ark. App. 221, 224, 756 S.W.2d 913, 915 (1988) (citing *Linehan v. Linehan*, 8 Ark. App. 177, 649 S.W.2d 837 (1983)). Thus, we find *Ottinger* and *T.M.J. Builders* distinguishable, and not applicable to the facts at hand.

■ A contractual stipulation can only be withdrawn on grounds for nullifying a contract, *i.e.*, fraud or misrepresentation. *See Linehan*, *supra*. The generally accepted rule is that rescission cannot be enforced or ordered on account of unilateral mistake unless some special ground for the interference of a court of equity is shown. There can be no rescission on account of the mistake of one party only, where the other party was not guilty of any fraud, concealment, undue influence, or bad faith, and did not induce or encourage the mistake, and will not derive any unconscionable advantage from the enforcement of the contract. *Lowell Perkins Agency, Inc. v. Jacobs*, 250 Ark. 952, 469 S.W.2d 89 (1971). The fact that appellant entered into an agreement which later appeared improvident to her is no ground for relief. *Helms v. Helms*, 317 Ark. 143, 875 S.W.2d 849 (1994).

■ Chancery cases are reviewed *de novo* on appeal, and the appellate court will not disturb the chancellor's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Jones v. Jones*, 43 Ark. App. 7, 858 S.W.2d 130 (1993). Because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court will defer to the chancellor's superior opportunity to assess credibility. *Id.*

■ The chancellor heard the testimony and found appellant's former attorney to be more credible than appellant and her father. The chancellor's findings are not clearly erroneous in light of the testimony and proof summarized above. We therefore cannot say that the chancellor erred in refusing to set aside the settlement agreement due to appellant's unilateral mistake.

Affirmed.

JENNINGS and STROUD, JJ., agree.