The Honorable Stuart Vess State Representative 6717 Pontiac Drive North Little Rock, AR 72116-5232
Dear Representative Vess:
This is in response to your request, on behalf of the City of Maumelle, for an opinion on several questions regarding suburban improvement districts and municipal government. Your questions are restated and addressed below in the order posed.
Question 1 — Maumelle Suburban Improvement District No. 500 (MSID 500) isa suburban improvement district organized and controlled under pre-1981suburban improvement district statutes. Can the MSID 500 Commission voteto sell their assets to the City of Maumelle? If so, of the three-membercommission, how many votes are necessary to sell the assets? Can theCommissioners of the MSID 500 vote to dissolve the improvement districtand transfer all the assets to the city of Maumelle? If so, of thethree-member commission, how many votes are necessary for thedissolution?
It is my understanding that MSID 500 was organized prior to March 16, 1981. Act 501 of 1981 established new procedures for the creation and dissolution of suburban improvement districts; however, the provisions of the act are not applicable to districts in existence on March 16, 1981. A.C.A. § 14-92-202(a); Act 510 of 1981, § 9; Op. Att'y Gen. 95-348. Districts in existence on March 16, 1981, were to continue being governed by the law in effect immediately prior to March 16, 1981. Id.
In my opinion, the district may, in all likelihood, sell any improvements that have been made and any land that it owns to the City of Maumelle. Under A.C.A. § 14-92-220(b), any district may sell any improvement owned by it to any adjacent or nearby municipality.[1] In addition, A.C.A. §14-92-223 provides that any land acquired by an improvement district may be sold by the board of commissioners for the price and on the terms it deems best. Both of these provisions were in effect immediately prior to March 16, 1981. Further, because the statutes do not specify that a unanimous vote of the board of commissioners is necessary, it is my opinion that two of the three commissioners must concur in the decision.
A definitive answer to your question regarding dissolution of the district will require a factual inquiry, which is beyond the scope of an Attorney General opinion. It is, however, my opinion that, assuming the district may dissolve, the district may not simply transfer all of its assets to the City of Maumelle. Arkansas Statute Annotated § 20-718 was the relevant law in effect immediately prior to March 16, 1981, and provided in part:
 b. After all bonds, notes or other evidences of indebtedness, plus all interest thereon, shall have been paid in full, a district may, by unanimous vote of the commissioners, be dissolved and all future levies and assessments canceled, the commissioners relieved from further duties, and the surplus funds of the district distributed in accordance with the procedures set forth in subsection (c) hereof, if title to and control of the facilities constructed by the district have been taken over or assumed by, any political subdivision . . ." See also A.C.A. § 14-92-237(a)(1). Accordingly, all bonds, notes or other evidences of indebtedness, plus interest thereon, must be paid before a district may be dissolved. See also Op. Att'y Gen. 98-070.
In addition, subsection (c) of Ark. Stat. Ann. § 20-718 provided in part:
 In the event the commissioners vote to dissolve the district under subsection (b) hereof, the commissioners shall convert all assets into cash and shall first pay from such surplus funds all debts of the district, including any reasonable legal and other expenses incurred in connection with the said dissolution; the commissioners then shall refund all remaining funds of the district pro rata to the property owners who hold title to the property in the district at the time said refund is made. The pro rata refund to the property owners shall be made on the basis of the most recent assessment or re-assessment of benefits on the parcel or parcels of property prior to dissolution, and shall be in the same proportion that the assessed benefits of each individual parcel of property bears to the total of the assessed benefits of all the property in the district, except that no property or owner whose property is delinquent in any sum for district assessments, penalties or interest, at the time such refund is made shall be counted in calculating the pro rata distribution, or receive any portion of such refund. Within 90 days after the distribution of said surplus funds has been completed, the commissioners shall file a copy of the resolution of dissolution and a financial statement of the district, verified by all commissioners, in the office of the county clerk in the county where said district is located.
See also A.C.A. § 14-92-237(c). Thus, the assets of the district may not simply be transferred to the City of Maumelle. The remaining funds of the district must be refunded to the property owners.
Question 2 — A.C.A. § 14-51-206 deals with the authority of a civilservice commission and a municipality's right to secure legalrepresentation. Does the statute allow the city attorney to advise andrepresent the commission on a regular basis? Is the City required to useindependent legal counsel only when questions regarding managerialemployment decisions are reviewed?
Arkansas Code Annotated § 14-51-206, "Attorney for commission and city," provides:
 (a) Except if the commission decides otherwise, the city attorney shall act as attorney for the commission in all trials or other legal transactions. Provided, the commission may appoint an attorney to represent the commission if it so desires.
 (b) The city shall hire, on an annual basis, independent legal counsel to represent the city and the department head when the city's managerial employment decisions are brought for review before the commission and in all trials, proceedings, or other legal transactions before the commission.
The Arkansas Supreme Court has stated that the first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.Mountain Home Sch. Dis. v. T.M.J. Builders, 313 Ark. 661, 858 S.W.2d 74
(1993). Where the language of a statute is plain and unambiguous, the court will determine legislative intent from the ordinary meaning of the language used. Id.
The foregoing statute provides when the city attorney shall represent the commission; however, except for part (b), it does not prohibit other representation, such as providing advice on a regular basis. It is my understanding that the City of Maumelle is a city of the first class. The city council in cities of the first class are empowered, by virtue of the provisions of A.C.A. § 14-43-313, to prescribe by ordinance the duties of the city attorney. Op. Att'y Gen. 97-038, 97-113, and 90-033; see alsoCampbell v. City of Hot Springs, 232 Ark. 878, 341 S.W.2d 225 (1960). Any ordinance in this regard will therefore be determinative of this issue.
Finally, under A.C.A. § 14-51-206(b), the city must hire independent legal counsel "to represent the city and the department head when the city's managerial employment decisions are brought for review before the commission and in all trials, proceedings, or other legal transactions before the commission." (Emphasis supplied.) I have found no other instances with regard to the civil service commission in which the city is statutorily required to use independent legal counsel.
Question 3 — Enclosed is a copy of a lease the City of Maumelle enteredinto for the use of a fire apparatus. In the lease there is no dollarfigure stated for the "buy-out" cost at the end of the lease term. Thepurchase price is stated as 20% of the original cost or the fair marketvalue. As you can see, the total amount of lease payments will be$351,500.30. Vehicle value at time of purchase $311,975.00. Estimatedvalue of the vehicle at lease end will be approximately $255,000.00. Doesthe lease buy-out mean the difference (if any) between the lease paymentsmade and the market value at lease end? If not, does the required paymentof approximately $530,000.00 for a $311,975.00 fire engine constitute anytype of usury law violation (or other appropriate statute)?
A conclusive response to your question would require construction of the particular lease agreement, a function that is ordinarily not within the province of an Attorney General opinion. See generally Op. Att'y Gen.92-029 and 94-332. The Attorney General's office is not authorized to conduct factual analyses or to construe the provisions of contracts. Op. Att'y Gen. 97-163. I therefore advise that questions regarding the construction of the lease agreement should be addressed to the city attorney, or other local counsel to whom the city usually looks for advice.
It should, however, be noted that as a general matter, lease/purchase agreements entered into by cities can be violative of Ark. Const. art.16, § 1, because many are not truly "lease" agreements, but are actually conditional sales contracts with interest.[2] See Op. Att'y Gen.94-070, 94-030, and 93-383. In Brown v. City of Stuttgart, 312 Ark. 97,847 S.W.2d 710 (1993), the court concluded that the city's "lease" agreement for the acquisition of a garbage truck was in fact a sales contract that constituted an interest-bearing evidence of indebtedness contrary to art. 16, § 1. This case should offer guidance in addressing the particular "lease" agreement entered into by the City of Maumelle, and I again suggest that the city seek the advice of its local counsel.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] "Nearby municipalities" means municipalities within ten miles of any boundary of the district. A.C.A. § 14-92-201(5).
[2] It should be noted that Referred Amendment No. 1, to be voted on at the November 1998 General Election, is a Constitutional Amendment to authorize municipalities and counties to incur short-term financing obligations.