The Honorable Jim Argue State Senator 5300 Evergreen Drive Little Rock, AR 72205
Dear Senator Argue:
I am writing in response to your request for an opinion on the following questions concerning the Horizontal Property Act (hereinafter "the act," codified at A.C.A. § 18-13-101 et seq. (1987 and Supp. 2001)), which as you note creates a mechanism for establishing horizontal property regimes:
 1. If the bylaws stipulate that the administration of a horizontal property regime will be in charge of a board of administration, to what extent may the co-owners vote to direct the actions of the board? Do the co-owners have the right to vote on matters other than amendments to the bylaws and election of board members? In particular, if the board becomes involved in an action at law concerning the regime, do the co-owners have the right to vote to direct the board concerning the conduct of the action?
 2. If the bylaws of a horizontal property regime do not include the required statement of the manner of removal of the board of administration, do the co-owners have the right to propose such a statement to the board and to vote on inclusion of that statement in the bylaws? If yes, would the vote require an affirmative vote of the co-owners representing two-thirds (2/3) of the total value of the building as a "modification of the system of administration" under Arkansas Code § 18-13-109 (a)?
 3. Do [A.C.A. §§ 18-13-102(3) and 18-13-108(b)(2)] taken together require only that fifty-one percent (51%) or more of the basic value of the property as a whole be present in order to establish a quorum? Or do these provisions also require that fifty-one percent (51%) or more of the basic value of the property as a whole actually vote in the affirmative on any given measure for that measure to pass?
RESPONSE
Your first question requires factual determinations that are outside the scope of an opinion from this office. There is no established procedure under the statutes for addressing the situation posed by your second question. Nor has my research yielded any authority on the matter. I am thus unable to answer the first part of this question. While it seems reasonable to speculate that there is some avenue for curing this omission in the bylaws, redress through the courts may be necessary if the bylaws do not supply a procedure. With regard to the second part of this question, it is my opinion that A.C.A. § 18-13-109 is inapplicable in this situation. With regard to your third question, it is my opinion that a majority of at least fifty-one percent (51%) of the basic value of the property is required to adopt decisions.
Question 1 — If the bylaws stipulate that the administration of ahorizontal property regime will be in charge of a board ofadministration, to what extent may the co-owners vote to direct theactions of the board? Do the co-owners have the right to vote on mattersother than amendments to the bylaws and election of board members? Inparticular, if the board becomes involved in an action at law concerningthe regime, do the co-owners have the right to vote to direct the boardconcerning the conduct of the action?
The answers to these questions will depend largely upon the specific governing bylaws, and perhaps other regime instruments, including the master deed.[1] The bylaws are privately promulgated, and in accordance with A.C.A. § 18-13-108(b)(1) (1987), they must, among other things, specify the powers of the board of administration. The bylaws will therefore generally be determinative of whether a particular matter is within the board's power to direct. But cf. Preston v. Bass,13 Ark. App. 94, 680 S.W.2d 115 (1984) (regarding co-owners' authority with respect to use of general common elements).
Consequently, I am unable to resolve these questions in the limited format of this opinion. I lack the resources and the authority to construe the privately promulgated bylaws and formulating documents of a horizontal property regime. This would require the giving of general legal advice with respect to a set of facts of which I am not fully apprised. Private legal counsel should be consulted on these matters, to be assured that the questions are properly addressed within the organizational framework of the particular regime.
Question 2 — If the bylaws of a horizontal property regime do not includethe required statement of the manner of removal of the board ofadministration, do the co-owners have the right to propose such astatement to the board and to vote on inclusion of that statement in thebylaws? If yes, would the vote require an affirmative vote of theco-owners representing two-thirds (2/3) of the total value of thebuilding as a "modification of the system of administration" underArkansas Code § 18-13-109 (a)?
The act does not address the bylaws' failure to comply with A.C.A. §18-13-108(b). This Code section is clear in providing that the bylaws of a horizontal property regime must specify, as part of the minimum requirements, the "manner of removal" of the administrator or the board of administration. This Code section states:
(b) The bylaws must necessarily provide for at least the following:
 (1) Form of administration, indicating whether this shall be in charge of an administrator or of a board of administration, or otherwise, and specifying the powers, manner of removal, and, where proper, the compensation thereof[.]
If the bylaws do not include a provision addressing the "manner of removal," I believe it reasonably follows that there must be some recourse or procedure for supplying the missing information. The legislative intent is clear that "the particulars set forth in §18-13-108 shall always be embodied in the bylaws." A.C.A. § 18-13-109(a) (1987) (emphasis added). The statutes do not, however, address the procedure for including all of the "particulars" where the bylaws do not satisfy the statutory requirements. It is possible that this would involve amending the bylaws, presumably under procedures governed by the bylaws, as the statutes do not address bylaw amendments. But this will depend upon the specific bylaws. Consequently, I cannot definitively opine regarding the requisite procedure.
With regard to the second part of this question concerning A.C.A. §18-13-109, it is my opinion that including one of the omitted "particulars" in the bylaws is not tantamount to a "modification" of the "system of administration." Arkansas Code Annotated § 18-13-109 states:
 (a) The sole owner of the building or, if there is more than one, the co-owners representing two-thirds (2/3) of the total value of the building may, at any time, modify the system of administration, but each one of the particulars set forth in 18-13-108 shall always be embodied in the bylaws.
 (b) No such modification may be operative until it is embodied in a recorded instrument, which shall be recorded in the same office and in the same manner as was the master deed and original bylaws of the horizontal property regime involved.
Although the statute does not elaborate upon the meaning of the phrase "modify the system of administration," it seems clear that this encompasses more than simply including the "particulars" in the bylaws as required by A.C.A. § 18-13-108. In my opinion, this distinction is apparent from the statute's plain language. It is a basic rule of statutory construction that absent some ambiguity, the plain language will control. See e.g., Mountain Home School District No. 9 v. T.M.J.Builders, Inc., 313 Ark. 661, 858 S.W.2d 74 (1993).
It is therefore my opinion that the vote requirement in § 18-13-109 does not apply in the case of a failure to include one of the particulars in the bylaws.
Question 3 — Do [A.C.A. §§ 18-13-102(3) and 18-13-108(b)(2)] takentogether require only that fifty-one percent (51%) or more of the basicvalue of the property as a whole be present in order to establish aquorum? Or do these provisions also require that fifty-one percent (51%)or more of the basic value of the property as a whole actually vote inthe affirmative on any given measure for that measure to pass?
It is my opinion that § 18-13-108(b)(2) governs the vote requirement for the adoption of decisions by the co-owners. This section includes the following among the particulars that must be included in the bylaws:
 Method of calling or summoning the co-owners to assemble, that a majority of at least fifty-one percent (51%) is required to adopt decisions, who is to preside over the meeting, and who will keep the minute book wherein the resolutions shall be recorded[.]
A.C.A. § 18-13-108 (1987) (emphasis added).
Construing the emphasized language with reference to the act as a whole, I interpret this to mean 51% or more of the basic value of the property as a whole. See, e.g., A.C.A. § 18-13-102 (6) (defining "majority of co-owners" as "fifty-one percent (51%) or more of the basis value of the property as a whole, in accordance with the percentages computed in accordance with the provisions of § 18-13-112[.]" See also Legislation — No. 60 — Horizontal Property Act — The Concept of Condominium, 15 Ark. L. Rev. 430, 431(1960-1961) (stating that "[a] majority interest of unit owners is required to adopt decisions necessary or appropriate to the administration of the principal property or regime. . . .") (Emphasis added).
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The master deed is the document creating and establishing the horizontal property regime. See A.C.A. § 18-13-104 (1987). It is executed by the owner or owners of the real property making up the regime, and recorded with the county clerk. Id. The bylaws must be recorded with the master deed. A.C.A. § 18-13-108(a) (1987).