2009 Ark. App. 169

**T–1 CONSTRUCTION, INC., Appellant,**

v.

**TANNENBAUM DEVELOPMENT COMPANY, LLC, Appellee.**

**No. CA 08–889.**

Court of Appeals of Arkansas.

March 11, 2009.

Ed Daniel IV, P.A., by: Ed Daniel IV, Little Rock, for appellant.

Belew & Bell, by: Steve Bell, Batesville, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant T–1 Construction, Inc., appeals the April 7, 2008 order of the Cleburne County Circuit Court, which denied its claim for specific performance against appellee Tannenbaum Development Co., LLC, and granted appellee's claim for rescission on the contract between the parties. On appeal, appellant argues that there was not substantial evidence to support the circuit court's finding of unconscionable unilateral mistake by appellee's owner/manager, Gray Turney. We affirm.

4.   We deny as moot Dillard's motions to strike.

## Facts & Procedural History

Appellee, through its owner/manager, Gray Turney, signed an exclusive right-to-sell agreement with Lake Real Estate in Heber Springs, Arkansas. The agreement was for the sale of five lakefront lots in Tannenbaum, Cleburne County, Arkansas. The agreement stated the legal description and address of the property as "Lots 13–17, East Shores at Tannenbaum, Cleburne County, Arkansas," and listed a total offering price of $75,000. A real estate contract was subsequently negotiated and signed on or about February 2, 2007, for "Lots 13–17, East Shore Subdivision, Cleburne County, Arkansas," for a total purchase price of $70,000. That form was prepared by appellant's broker with appellant. On March 14, 2007, the day before the closing was to occur, Mr. Turney learned that the sales price was to be for all five lots as a group, as opposed to $70,000 per lot, for a total of $350,000. He refused to consummate the sale, claiming that the sales price was a mistake.

Appellant did not contest that appellee was operating under a unilateral mistake, and appellee did not contend that any fraud was perpetrated by appellant. Appellant maintained that the four elements of unconscionability necessary to void the contract for unilateral mistake had not been met. Appellant filed a complaint for specific performance on March 30, 2007. Appellee filed a timely answer to the complaint on April 13, 2007, and later an amended answer and counterclaim for rescission of the contract on January 2, 2008. The matter was heard on January 3, 2008, and the circuit court entered an order on April 7, 2008, denying appellant's claim for specific performance against appellee and granting appellee's claim for rescission of the contract. Appellant filed a timely notice of appeal on May 2, 2008.

## Standard of Review

Our standard of review for an appeal from a bench trial is not whether there was substantial evidence to support the findings of the circuit judge, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Duke v. Shinpaugh*, 375 Ark. 358, 290 S.W.3d 591 (2009). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.*

## Discussion

■ Appellant asserts that the sole issue to be determined is whether the mistaken belief of appellee's owner/manager, Gray Turney, that the sales contract was $70,000 per lot for each of the five lots, instead of $70,000 total for all five lots, was unconscionable. The circuit court found that it would be inequitable and unconscionable to enforce the contract because of the damages that would be incurred by appellee if the contract were enforced. Appellant states, however, that there was no proof of damages offered at trial, only the loss of bargain by appellee if it was required to honor its obligations under the sales contract.

Citing *Mountain Home School District v. T.M.J. Builders, Inc.*, 313 Ark. 661, 858 S.W.2d 74 (1993), appellant sets out the elements necessary to support the circuit court's finding of rescission due to unilateral mistake as follows: (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to a material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake; (4)

it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain. It is appellant's contention that appellee did not meet its burden of proof with regard to the first and third requirements. Specifically, the evidence presented at trial indicated that Mr. Turney had a real estate broker, as well as a real estate agent, and further indicated that he read the sales contract but did not learn of his own mistake until the day before closing.

Appellant initially analyzes the facts of the instant case with respect to the first requirement for rescission, that the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable. Appellant refers to case law in which a mistake costing 3.9% of a bid contract was found to be not unconscionable under the standard, see *T.M.J. Builders, supra*; acknowledging, however, that a mistake costing 22.7% of a bid contract could be unconscionable. See *State ex rel. Arkansas State Highway Commission v. Ottinger*, 232 Ark. 35, 334 S.W.2d 694 (1960). Here, appellant maintains, there is no "cost" to appellee at all, only a loss of bargain in the purchase price due to the unilateral mistake. Appellant asserts that appellee's loss should be disregarded as a factor of unconscionability just as appellant's speculative gain would be under the fourth factor of this test.

Regarding the third requirement—whether appellee's manager's unilateral mistake occurred notwithstanding the exercise of reasonable care by him—appellant claims it did not. Appellant states that the record shows that appellee had signed an exclusive right-to-sell agreement, with the broker of appellee's choosing, Lake Real Estate in Heber Springs, Arkansas. That agreement was for the sale of five lots in Tannenbaum, Cleburne County, Arkansas. The agreement stated the legal description and address of the property as "Lots 13–17, East Shores at Tannenbaum, Cleburne County, Arkansas," and listed a total offering price of $75,000. A real estate contract was subsequently negotiated and signed on or about February 2, 2007, for "Lots 13–17, East Shore Subdivision, Cleburne County, Arkansas," for a total purchase price of $70,000. That form was prepared by appellant's broker, with appellant.

Appellant urges that the standard of review for unconscionability tried by a circuit court sitting without a jury is whether the circuit court's findings are clearly erroneous given the totality of the circumstances. *Associated Press v. Southern Arkansas Radio Co.*, 34 Ark.App. 211, 214, 809 S.W.2d 695, 697 (1991) (holding that two important considerations are (1) whether there is a gross inequality of bargaining power, and (2) whether the aggrieved party was made aware of and comprehended the provision in question). Here, appellant argues there was clearly no inequality of bargaining power and there was no proof or indication that appellant was aware of appellee's manager's mistake until the sales contract had been executed and the parties were at the closing table ready to consummate the sale. Under the standard of review and based upon an analysis of the facts in the instant case, appellant maintains that appellee is not entitled to rescission of the sales contract based upon the unconscionability of a unilateral mistake.

We disagree. Evidence presented as to the value of the lakefront lots in question included (1) testimony from John Simmons, appellee's expert appraiser, that the value of all five lots was $400,000; (2) testimony from Larry Poff, appellee's second expert appraiser regarding the individual lots: lot 13–$70,000, lot 14–$70,000, lot 15–$65,000, lot 16–$62,500, lot 17–

$57,500; (3) evidence from the Cleburne County Tax Assessor that the lots were valued at $100,000 per lot; (4) sales of lots 8, 10, 12, 21, 27, 28, 29 in East Shores Subdivision in Tannenbaum, each for $75,000; (5) Gray Turney's testimony that there was no way that he would sell the lakefront lots for $14,000 because it would be "ridiculous."

Appellee points out that appellant appears to ask this court to require appellee to fulfill its obligation to sell the real property to appellant on the terms and conditions of the sales contract between them. However, we note that the denial of the specific performance has not been raised in this appeal, with the only issue before us being the rescission granted to appellee.

There is no dispute that the contract signed by Mr. Turney stated that the five lakefront lots in the East Shores Subdivision in Tannenbaum, Cleburne County, Arkansas, were to be sold for $70,000. There is no dispute that Mr. Turney so signed under a unilateral mistake that the sales price was per lot, rather than for the entire five lots. We hold that there is an abundance of proof that the five lots that are the subject of this case were worth, in total, at least $325,000 to $400,000, or four to five times the contract price. The parties acknowledge that *Ottinger, supra,* correctly sets out the elements necessary to support the circuit court's finding of unconscionability and rescission. Where the parties differ is their individual perspectives as to whether the evidence supports the circuit court's decision regarding requirements one and three.

Appellee contends that appellant failed to seriously address the argument that to force appellee to sell real property valued at $325,000 to $400,000 for a mere $70,000 would be unconscionable. Instead, appellee maintains that appellant attempted to bootstrap itself up by citing *T.M.J. Build-*

*ers,* and *Ottinger, supra,* as somehow being on point as to the issue in the instant case. Because each of these cases dealt with a percentage of a bid contract, they are factually distinguishable from this case other than to correctly state the applicable rule of law.

While appellant argues that because there would have been no cost to appellee, appellee's loss of bargain should be disregarded as a factor of unconscionability. In *Arkansas National Life Insurance Company v. Durbin,* 3 Ark.App. 170, 623 S.W.2d 548 (1981), this court held that, in assessing whether a particular contract or provision is unconscionable, the court should review the totality of the circumstances surrounding the negotiation and execution of the contract. Likewise, under *Hume v. United States,* 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889), the Supreme Court stated that an unconscionable contract is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Id.* at 415, 10 S.Ct. 134. Appellee urges that no one would knowingly sell lakefront property valued at $325,000 to $400,000 for a mere $70,000. We agree. Additionally, there can be little doubt that to enforce such an agreement would be unconscionable to appellee and a tremendous windfall to appellant.

As to the failure to exercise reasonable care, we note that both Mr. Turney and Sandra Dunkerson, the real estate agent who prepared the contract, testified that Ms. Dunkerson prepared the contract, went over it with Mr. Turney, and implemented the changes he requested regarding both her commission percentage and the retention of the mineral rights to the property. Mr. Turney explicitly testified that Ms. Dunkerson told him that the sales price was $70,000 *per lot,* while Ms. Dunk-

erson testified that she told him that it was $70,000 for all five lots. Appellee acknowledges that Mr. Turney's belief that Ms. Dunkerson stated that it was $70,000 per lot is the unilateral mistake that led to this litigation; however, appellee maintains that there is substantial proof that Mr. Turney exercised reasonable care in going over the contract with Ms. Dunkerson at her office and making necessary changes prior to signing it.

Under our standard of review, appellant bears the burden of proof to show that the circuit court's findings were clearly erroneous. Appellant failed to do so in this case. Based upon our review of the entirety of the evidence, we cannot say that we are left with a firm conviction that an error has been committed. The totality of the evidence supports the circuit court's finding that it would be inequitable and unconscionable to enforce the contract because of the damages that would be incurred by appellee if the contract were enforced. Accordingly, we affirm.

|9Affirmed.

VAUGHT, C.J., and KINARD, J., agree.