## NEWTON ET AL. V. SNYDER, ADMINISTRATRIX.

1. GIFTS CAUSA MORTIS: *Essentials.*
   To establish a gift *causa mortis,* the evidence must show not only that the person *in extremis* designated with proper distinctness the thing given and the donee, but it must also show that the property was presently to pass, and that the intention was carried into effect by an actual or effective delivery.

2. SAME. *Delivery.*
   Delivery to a third person for a donee, is as effective as delivery to the donee; but delivery to an agent as agent for the giver to perform the act or make delivery only after the giver's death, would amount to nothing,

APPEAL from *Jefferson* Circuit Court.
Hon. J. A. WILLIAMS, Circuit Judge.

*Martin & Taylor* for appellants.

The attempted disposition of his property by O. P. Snyder, was at best only testamentary, and possessed none of the elements of a gift *causa mortis.* If it was testamentary, it was of no validity. A gift *causa mortis,* to be effectual, must be consummated prior to the death of the donor, subject to be defeated by reclamation or recovery, but must be as effectual as a gift *inter vivos.* That is, must be ac-

companied by delivery and change of dominion over the property granted. *48 Md., 559; 54 Ib., 475; 116 Mass., 566; 74 Mo., 195; Schouler's Personal Prop., 164–5; 24 Pick., 261.*

*McCain & Crawford* for appellee.

The facts and circumstances of this case clearly show a gift *causa mortis.* The delivery to a third party for the wife, is the same as a delivery to the wife. The *fact of delivery* is clear in this case. The particular words used are immaterial; it is the intention and accompanying circumstances that must be considered. See cases cited in brief of appellant in *107 U. S., p. 604; Nolen v. Harden, 43 Ark.; 49 N. Y., 17; 38 Am. Rep., Caradine v. Caradine, and cases cited; 53 Wis., 23; Redfield on Wills, vol. 3, title, "Gifts Causa Mortis."*

COCKRILL, C. J.   O. P. Snyder died intestate. His widow, the appellee, became administratrix of his estate, and filed an inventory thereof in the Probate Court. The heirs of Snyder and distributees of his estate filed exceptions to the inventory, and charged that it did not include all of the assets. The omission of the property named was admitted by the administratrix, and was claimed by her in her own right. The Probate Court sustained the exceptions, and on appeal to the Circuit Court this judgment was affirmed, excepting as to an item of $953.50 in currency, which the court found had been delivered to the appellee by her deceased husband as a gift *mortis causa.* The correctness of this finding is the controversy here. The facts are these:

At the time of Snyder's illness and death his wife was absent from home. Being informed of the near approach of death, he told his attendants that he had $1,600 in bank,

$950 under his pillow and in his coat pocket, and several hundred dollars in the hands of different persons; that he desired $200 of this to go to a niece, and $100 to an old servant, and wanted his wife to have the residue of his money. There are three witnesses to the point of his directions as to the disposition of the money. He talked with them severally and collectively about his affairs a short time before his death. To Dr. Brunson he said the money was a part of his estate, and that he expected his wife to get his estate. Brunson called Tannehill into the room, expecting him to draw a will. Snyder told Tannehill that he wanted his wife to have all his property except the money that was to go to his niece and servant; that he wanted his wife to have the money and wanted it put where it would do the most good. He told John M. Clayton where his money was, and said he wanted it to go to his wife. A paroxysm of pain prevented him from finishing his conversation with Clayton, and it was never resumed. After this the money *de quo agitur* was found and counted, and Snyder was apprised of the fact, but gave no other direction in regard to it. Brunson, who had the money in hand, turned it over to Clayton for safe keeping, as he was a friend of Snyder, and the sheriff of the county. Tannehill drew up a memorandum of Snyder's wants as to the disposition of his property, but it was never signed or attested as a will. It is not known whether Snyder knew that the money was turned over to Clayton. He gave no specific direction in regard to it. The witnesses were all of the impression, at the time, that the money would go to Mrs. Snyder. Afterwards, Clayton paid the money to Mrs. Snyder, as administratrix of the estate of her deceased husband, taking a receipt from her in her official capacity.

Newton et al. v. Snyder, Adx.

To establish a gift *mortis causa* the evidence must be suf- 1. GIFTS CAUSA MORTIS: Essentials.
ficient to show, not only that the person *in extremis* des-
ignated with proper distinctness the thing to be given and
the person who is to receive it, but it must establish also
that the property was presently to pass, and that the inten-
tion was carried into effect by an actual or effective delivery.
In this respect there is no difference between gifts *inter
rivos* and *causa mortis*. *Basket v. Hassell, 107 U. S., 602 ;
Coleman v. Parker, 114 Mass., 30.*

In the case of *Nolen r. Harden, 43 Ark., 307*, the
question was as to a gift *inter vivos*, and the court
held that if the gift is intended to operate *in presenti*, and
is accompanied by delivery it operates at once; but if there
is only an intention to give and no delivery is made, it will
be inchoate and incomplete however strong the expres-
sion of intention may be. See, too, *Hynson v. Terry, 1
Ark., 83.*

The proof here shows an earnest desire on the part of the 2. SAME: Delivery.
dying man that Mrs. Snyder should have the benefit of his
money, and he doubtless thought that his friends, who
heard his wish, would see it executed, not only as to the
money then in his room, but that in the bank and else-
where as well. His directions to them however, in this
regard, were testamentary in character, and cannot be
effective, because not made and proved as a will. It does
not appear that he intended that the property in the fund
should presently pass to his wife. Delivery to a third per-
son for a donee is as effective as delivery to the donee, but
delivery to an agent in the character of an agent for the
giver, to perform the act or make the delivery only after
the giver's death, would amount to nothing. (*2 Redf. Wills,
chapter 12, secs. 42, 45.*) It is evident that Brunson, who
gathered the money, and Clayton, who held it, were acting
for Snyder, and on the testimony presented here could not

have been acting in any other capacity.   They thought the
testamentary disposition of the money was good, and in-
tended to carry it out.   Clayton in the end did right, how-
ever, in turning the money over to Mrs. Snyder as ad-
ministratrix of the estate of Snyder, and not as legatee
or donee.

Reversed and remanded for a new trial.