## BARTON v. WILSON.

Opinion delivered January 18, 1915.

1. DOWER—VESTS WHEN—DEATH OF WIDOW.—Upon the death of her husband the widow takes absolutely an undivided interest in fee simple in her husband's estate, and it is such an interest as im-

mediately vests, and without assignment becomes subject to transmission by conveyance or inheritance.

2. DOWER—ASSIGNMENT OF—DEATH OF WIDOW—WHO MAY INHERIT.—The dower interest of a widow under Kirby's Digest, § 2709, vests in her immediately upon the husband's death, whether the same is ever assigned to her or not, and upon her death will descend to her heirs, whether lineal or collateral.

3. DOWER—INTEREST OF WIDOW—WIDOW TAKES, HOW.—Under Kirby's Digest, § 2709, a widow does not take an interest in her deceased husband's real property as heir, but she takes as widow, the same being a new acquisition.

Appeal from Pope Chancery Court; *Jordan Sellers,* Chancellor; affirmed.

*J. G. Wallace & Sons,* for appellants.

Our position is two-fold.

1. That the widow having died before her dower was assigned, and without asserting her claim or right to have dower assigned, she was not vested, immediately upon the death of her husband, with an estate of such character as would pass at her death to her heirs or legal representatives. Kirby's Digest, § 2709; Tiedeman on Real Property, § 85; 61 Ark. 61; 84 *Id.* 558; 15 Pet. (U. S.) 21; 21 Ark. 347; *Ib.* 62; 31 *Id.* 334; 62 *Id.* 313; 60 *Id.* 478; 14 Cyc. 961; 59 Hun. 538; 49 N. J. Eq. 66; 16 S. W. 119; 105 Ark. 653; 98 *Id.* 118; 11 *Id.* 212; 5 *Id.* 608; 14 *Id.* 421; 53 *Id.* 279; 60 *Id.* 169; 30 *Id.* 775; 55 *Id.* 235; 2 Scribner on Dower, 27.

2. The intention of the act giving the widow title in fee simple to one-half the real estate of which her husband died seized, when said estate is a new acquisition, and one-half of the personal estate absolutely, makes her statutory heir of her husband and vests title in her by descent, which would, at her death, without issue or direct descendants, revert to his heirs. 32 Ind. 497; 74 Ind. 563; 13 Ind. 508; 117 *Id.* 194; 19 N. E. 776; 136 Ind. 391; 16 *Id.* 437; 143 Mass. 389; 9 N. E. 747; 52 Fed. 371, etc.

As to personal property it is held that the husband or wife are heirs to each other. 29 Ill. App. 643; 62 Ill. 471; 52 Ill. 62; 126 *Id.* 158; 5 Kan. 384; 64 Conn. 240;

38 Oh. St. 473; 100 Mich. 215.   83 Ark. 293 is not in point. It is clear that the widow takes by descent and not by purchase.  Cases *supra*.

*R. B. Wilson* and *O. James Ferguson,* for appellees.

1.   The assignment of the widow's dower under section 2709, Kirby's Dig., in the lifetime of the widow is not essential in order for her heirs to inherit her dower estate.   Her dower at common law and by our statute, section 2687, Kirby's Dig., vested on the death of the husband and before any assignment.  14 Cyc. 960; 74 Ga. 278; 57 Ia. 66; 60 N. J. 234; 37 Vt. 9; 53 Neb. 375; 68 Am. St. 608; 134 *Id.* 397; Tiffany, Modern Law of Real Prop., p. 469; 14 Cyc. 896; 98 Ark. 118; 31 *Id.* 576; 53 *Id.* 279; 60 *Id.* 169; 29 *Id.* 650; 62 *Id.* 51; 84 *Id.* 558; 60 *Id.* 478.

2.   Under the common law prior to assignment of dower the widow had no vested freehold estate.   14 Cyc. 961; 21 Ark. 62.   At common law and under section 2687, Kirby's Digest, dower was a *life estate* and was confined to real estate.  Wash., Real Prop., 174; 60 Ark. 476. There was no interest in personal property during the husband's lifetime.  2 Bl. Com. 433; 2 Kent Com. 130; 42 Ark. 164; 32 *Id.* 443.   But after the husband's death, the widow may claim her distributive share.  2 Bl. Com. 515-16; 2 Kent Com. 427; Schouler, Dom. Rel., par. 205.

3.   But her dower estate is now enlarged by statute to an absolute estate.  Act April, 1887; Kirby's Dig., § 2709; 14 Cyc. 63; 38 Ill. 522; 21 Mo. 519; 8 Ind. 54; 41 Vt. 467; 26 Conn. 349; 57 Ia. 66; 19 Fla. 778; 5 Ark. 612; 52 *Id.* 8; 16 S. W. 119; 75 *Id.* 240; 80 *Id.* 262; 98 *Id.* 118. The case of 83 Ark. 29 settles the controversy here.

4.   The widow is not an heir of the husband. Kirby's Dig., § 2636; 53 Ark. 261; 8 *Id.* 9; 5 *Id.* 618; 88 Ill. 251; 89 N. E. 896; 50 *Id.* 873; 137 S. W. 924; 42 Ia. 464; 18 Mass. 189; 98 Ark. 118, 120.

5.   The widow's dower is a new acquisition.  98 Ark. 93, 99.   Her estate is not ancestral.   Walker's Am. Law (4 ed.) 409; 31 Ark. 576; 98 Ark. 118; 98 Ind. 429;

37 S. C. 285. The widow is not blood kin to the husband, and marriage is a valuable consideration. 98 Ark. 99, and 102, and cases *supra*.

*Jas. H. Johnson,* for the Travis heirs.

1. Lands which come by purchase do not descend as an ancestral estate. 14 Cyc., § 4, p. 32; 15 Ark. 555; 20 *Id.* 19; 98 *Id.* 93.

2. The half blood inherit equally with the whole blood. 14 Cyc., par. H, p. 45; 15 Ark. 555; 20 *Id.* 19; 53 *Id.* 261; Kirby's Dig., § § 2709-2710. The assignment of dower is as essential now as at common law.

3. For dower under the common law, see Co. Lit. 30-A; 2 Bl. Com. 130; 4 Kent Com. 35; Wash., Real Prop., 146; 53 Ark. 279; 53 *Id.* 235; 60 *Id.* 169. Prior to assignment the dower right is not assignable to a person not vested with the fee. 14 Cyc. 964; 62 Ark. 51; 31 *Id.* 334. It is merely a right to a chose in action. 14 Cyc. 960, par. 2; 21 Ark. 62.

4. Dower dies with the widow. Tiedeman, Real Prop., § 141, p. 111. When she dies without asserting her claim, neither her personal representatives, nor those of her assignee, can maintain an action to have dower admeasured. 59 Hun. 538; 49 N. J. 66; 98 Ark. 118. Dower must be assigned before the death of the widow, if not her dower abates as to her collateral heirs and representatives. Cases *supra*.

McCULLOCH, C. J. Appellant M. F. Barton instituted this action in the chancery court of Pope County to establish and quiet her title to certain lands lying in that county, and also a large amount of personal property, all of which she claims by inheritance from her brother, J. K. Bowers, who died without lineal heirs. A portion of the lands owned by decedent, J. K. Bowers, came to him by inheritance from his father, and therefore constituted an ancestral estate; the remaining portion of the lands, which is quite the largest part of his estate, were lands which he acquired himself by purchase. J. K. Bowers died in Pope County on November 27, 1912, and

was survived by his wife, who died one day later without having had her dower assigned to her. Mrs. Barton was the only collateral heir of J. K. Bowers of the full blood, but he left other heirs of the half blood, namely, descendents of his half brother, W. A. Travis. Mrs. Bowers was a Boyd before her marriage and she died childless, leaving collateral heirs who were made parties to this proceeding. The Travis heirs were also made parties, as was the administrator of the estate of said decedent.

The court in its decree awarded the ancestral lands to the appellant, Mrs. Barton; and divided the personal property and the land constituting the new acquisition, one-half to the Boyds, as heirs at law of the widow of J. K. Bowers, and one-fourth to appellant, Mrs. Barton, and the other fourth to the Travis heirs. The Travis heirs have cross-appealed from that part of the decree which awards a portion of the estate to the Boyd heirs and also from the part of the decree which awards all of the so-called ancestral lands to appellant.

The contention of appellant is that because the widow died before her dower was assigned, and without asserting a claim of her right to have it assigned, she did not become immediately vested with an estate of such a character that it passed at her death to her heirs; and it is also contended that if the widow took any interest in the land, it was as heir of the decedent in the nature of an ancestral estate, which upon her death went back to the source whence it came, *i. e.*, the blood of the original donor, and that her heirs took nothing by inheritance.

The controlling statute on the subject of widow's dower reads as follows: "If a husband die, leaving a widow and no children, such widow shall be endowed in fee simple of one-half of the real estate of which such husband died seized, where said estate is a new acquisition, and not an ancestral estate; and one-half of the personal estate, absolutely and in her own right, as against collateral heirs, but, as against creditors, she shall be endowed with one-third of the real estate in fee simple

if a new acquisition and not ancestral, and of one-third of the personal property absolutely. Provided, if the real estate of the husband be an ancestral estate she shall be endowed in a life estate of one-half of said real estate as against collateral heirs, and one-third as against creditors." Kirby's Digest, § 2709.

(1) The argument of appellant is based upon decisions of this court to the effect that the widow's dower right, before allotment to her in severalty of her share, is not transferable to a stranger so as to confer any rights enforceable at law. *Jacoway* v. *McGarrah*, 21 Ark. 347; *Jacks* v. *Dyer*, 31 Ark. 334; *Weaver* v. *Rush*, 62 Ark 51; *Flowers* v. *Flowers*, 84 Ark. 557. From this premise it is argued that, under the present statute, if the widow dies without asserting her claim, neither her personal representatives nor heirs can maintain an action to recover the land nor for personal property not assigned to her as dower before her death. The statute quoted above was enacted in 1891 and worked a very material change in the law on that subject. Prior to the passage of that statute, the widow took only a life estate, but now, in certain instances, she takes land in fee simple. It has always been the law of this State that the widow's right to dower in personal property is not lost by her death, but descends to her personal representatives for the benefit of her creditors or heirs, and this is so for the reason that her dower right in personalty is absolute. The statute now under consideration gives the widow an absolute estate, and therefore it necessarily follows, for the same reason, that the interest conferred by the statute vests immediately upon the death of the husband and descends to the heirs of the widow, whether the assignment is made before her death or not. She takes absolutely an undivided interest in fee simple, and it is such an interest as immediately vests and without assignment becomes subject to transmission by conveyance or inheritance.

The following is laid down as the rule with respect to personal property, and we think it is equally appli-

cable to real estate where an interest is conferred in fee simple: "If the surviving spouse of an intestate dies before a distribution of the intestate's personalty has been made, the survivor's distributive share vests on the other's death, both at common law and under the statutes, and passes to the survivor's personal representatives." 14 Cyc. 63.

In Indiana, where there is a similar statute, the courts of that State held that the widow's one-third dower vested at the moment of the husband's death. *Mills* v. *Marshall*, 8 Ind. 54. Such is the construction of a similar statute in Vermont. *Johnson* v. *Johnson*, 41 Vt. 467. Under a statute in Iowa which provides that "one-third in value of all the legal or equitable estates in real property possessed by the husband at any time during marriage, * * * shall be set apart as her (the wife's) property in fee simple if she survives him," the Supreme Court of that State in construing the statute said: "Upon the death of the husband the widow was vested with the legal title to one-third of the real estate of which her husband died seized. This being so, the estate would naturally descend to her heirs, whether her interest had been set apart or not. The estate vests immediately upon the death of the husband, or it doesn't vest at all. Being a fee simple estate, it must of necessity descend to the heirs of the widow, unless she has in some manner disposed of it in her lifetime. Such an estate can not be obliterated or destroyed by the mere passive act of the owner unless there is some statute which so declares." *Potter* v. *Worley*, 57 Ia. 66. The Supreme Court of Florida so construed a similar statute in the case of *Woodberry* v. *Matherson*, 19 Fla. 778. Mr. Freeman, in his notes to the case of *Sanders* v. *McMillan*, 39 Am. State Rep. 19, said: "In some parts of the United States the estate has been changed by statute to one in fee, and it is a necessary result of this change that if the widow does not procure an assignment in her lifetime her heirs must be permitted, after her death, to prosecute the proceedings requisite to an assignment, for, if such were not the

case her estate in fee would be converted into an estate for life only by her mere inaction.''

(2) We think, too, that the question is decided by this court in *Drinkwater* v. *Crist,* 83 Ark. 293. After quoting the statute (Section 2709) of Kirby's Digest), it was said: ''It follows that the mother of appellee was the owner of one-half of the lands in controversy, and appellee, when her mother died, inherited her estate.'' The statement of facts in that case shows that the property was never assigned to the widow as her dower, yet the court held that the interest of the widow descended to her heirs, and the opinion constitutes a construction of the statute which ought to be taken as final. No authorities were cited in the opinion, but an examination of the authorities now demonstrates the correctness of the decision. It is contended that that decision doesn't apply here for the reason that the widow left lineal heirs, whereas in the present case there are only collateral heirs. That, however, is not a material distinction, because if the interest of the widow descended to her heirs, it is unimportant whether they are collateral or lineal. Either will take as heirs if the widow, before allotment of dower, acquired the lands under the statute as an inheritable estate.

(3) It is next contended by learned counsel for appellant that the interest which the widow took under the statute was as heir of her husband, and that under our statute of descent it must go back to the blood of the original donor. This argument, is, we think, unsound for more than one reason. In the first place, it is a mistake to assume that the widow takes as heir, for the statute expressly declares that the widow ''shall be endowed in fee simple of one-half of the real estate of which such husband died seized.'' Counsel rely mainly upon what they conceive to be the effect of certain decisions of the Supreme Court of Indiana. *Fletcher* v. *Holmes,* 32 Ind. 497, and other cases cited on the brief. In all of the cases cited by counsel, the court was construing another statute. The Indiana court in construing a statute similar

to ours expressly held that the widow did not take as heir. The proposition is fully discussed in two cases which have been repeatedly followed by the Indiana courts. *May* v. *Fletcher,* 40 Ind. 575; *Brannon* v. *May,* 42 Ind. 92. There are decisions of other courts construing similar statutes where it is held that the widow does not take as heir of her husband: *Gauch* v. *St. Louis, M. L. Ins. Co.,* 88 Ill. 251; *Crenshaw* v. *Moore,* 124 Tenn. 528, 137 S. W. 924; *Kendall* v. *Kendall,* 42 Ia. 464. The Supreme Court of Maine, in construing a similar statute (*Golder* v. *Golder,* 95 Me. 259), says: "The statute does not change the status of the widow with reference to her deceased husband's estate. It enlarges her interest by giving her an estate in fee instead of an estate for life. She still takes, not as heir, but as widow."

Another reason why the estate taken by the widow is not necessarily within the meaning of our statute is that that which is conferred under the statute by virtue of the marital relation comes to her as a new acquisition. The Supreme Court of Indiana, in the case of *Bookout* v. *Bookout,* 150 Ind. 63, said: "Marriage in the eye of the law is held to be a valuable consideration, and the wife is regarded as a purchaser for a valuable consideration of all the property which accrued to her by virtue of her marital rights." There is still another reason why the estate of the widow was not ancestral, within the meaning of our statutes of descent and distribution, so as to cast it back to the blood of the original donor. This court, in *Oliver* v. *Vance,* 34 Ark. 564, said: "The person last entitled to possession, or last invested with the vested remainder, remains the *propositus,* whose nearest heirs are to be traced. They must, however, be of the blood of the person from whom the benefit came, that is to say, the line of descent must be traced on that line, leaving off the side which bore no relation to the donor. In the case in judgment, we drop the mother altogether, since the land did not come through her, nor any of her blood. We take the father's line, because we find the lands came from a relative of the blood of the father.

But we retain the deceased Van R. as the *propositus,* and seek *his heirs on that side,* and not the heirs of the original donor. * * * Any construction of the law, which, on failure of descendants of a donee, would make the donor the *propositus,* would, in effect, enable one by gift or devise of land to a kinsman, to reserve a reversion to his heirs after an estate of inheritance given to another. This would contravene the policy of our laws.'' Again, in the case of *Johnson* v. *Phillips,* 85 Ark. 86, we said that the "person last entitled to possession, or last invested with the vested remainder, remains the *propositus,* whose nearest heirs are to be traced.'' Now, it would be impossible to follow our statutes of descent and distribution in this case if we treat the estate as an ancestral one within the meaning of the statute, for if we take the deceased widow as the *propositus,* we can find no heir of blood of the original donor. The widow herself not being of the blood of the original donor, none of her heirs could fall within that line. It necessarily follows that that statute has no application in this case. Our conclusion therefore is that the chancellor was correct in his holding that the Boyd heirs, that is to say the heirs of the widow of J. K. Bowers, inherited an undivided half of the lands which constituted a new acquisition of said J. K. Bowers.

The Travis heirs insist on their cross-appeal that the court awarded lands to appellant which were not in fact ancestral, for the reason that J. K. Bowers purchased an undivided interest from the appellant. The decree of the chancellor dealt only with the undivided interest of J. K. Bowers, which he inherited from his father, and the chancellor evidently held that the other undivided half was still owned by appellant. It is undisputed that Mrs. Barton inherited an undivided half of these lands from her father; and while there are some vague and uncertain statements in the record that she had sold her interest to her brother, J. K. Bowers, she disputes that fact, and the evidence is not sufficient to warrant a finding that she did convey. Of course, if she

had conveyed her interest to her brother, that would have constituted a new acquisition on his part. But the chancellor found that she had never made any such conveyance and therefore that she owned an undivided half in the lands, and that she inherited from her brother the other undivided half which was an ancestral estate in his hands.

Upon the whole, we think the decree of the chancellor was correct and the same is affirmed.