Ruby Jo BELLIS *v.* Edward A. BELLIS

CA 01-182                                                      56 S.W.3d 396

Court of Appeals of Arkansas
Division I
Opinion delivered October 10, 2001

*F. Lewis Steenken*, for appellant.

*Walters Law Firm*, by: *Bill Walters*, for appellee.

JOHN E. JENNINGS, Judge. The appellant, Ruby Jo Bellis, and appellee, Edward A. Bellis, are siblings, and this appeal arises out of their dispute over a music box, a family heirloom. The trial court found that the parties' father had made an *inter vivos* gift of the box to appellee. For reversal, appellant contends that the trial court's decision is not supported by the evidence. We disagree and affirm.

The music box in question was purchased by the parties' grandparents in 1946. Their grandfather predeceased their grandmother, and when she died the box was left to the parties' father by will. No one disputes that it was understood by all in the family that it was their grandparents' desire for the music box to pass to appellee, as the eldest and only son. The parties' father died in a car accident in 1985, and he was followed in death by their mother in 1999. Appellee went to the family home to get the box shortly after their mother died, but found that appellant had removed it from the home. When appellant refused to relinquish the box to him, appellee filed this suit in replevin.

At trial, appellee testified that his father gave him the box in 1983, the same year that he had moved to North Carolina. Appellee said that he left the box in his parents' home because he felt that it was secure there and because his mother enjoyed the box. Appellee introduced into evidence a copy of their father's 1984 will, which contained the provision, "The trust estate shall be divided equally between all of my children except Edward A. Bellis III who shall receive a distribution from the trust estate which is $10,000.00 less than the other shares as I have heretofore made a gift of certain property to Edward A. Bellis III." Appellee testified that the gift referred to in the will was the music box. He estimated that it had a present value of $25,000.

The parties' sister, Elizabeth Ann Bellis Hanna, testified that, after their father died, her mother told her to come get a music box that her father wanted her to have because her father had given the music box in question to appellee. She explained that, like appellee, her sisters Mary and Harriet had been given music boxes by their father prior to his death and that she and appellant received boxes after his death. She said that the boxes she and her sisters received were small and worth less than the music box given to appellee, and she testified that the provision in their father's will, leaving appellee $10,000 less in reference to a gift, was related to the music box in question. She stated that she and her sisters took their boxes but that appellee left his at the family home.

Another sister, Mary Dee Bellis, testified that it was always known that the music box was to go to appellee and that her father gave appellee the box sometime between 1983 and 1985. She said that her father told her that he had given appellee the box at the time her father gave her a music box. She also testified that she had had a discussion with her father about his leaving appellee less money in his will because he had given appellee the music box. The parties' remaining sister, Stella Harriet Bellis Foster, testified that appellee owned the music box because their father had given it to him before he died. She said that she heard her father acknowledge that the box had been given to appellee and that their mother continued to acknowledge appellee's ownership after their father's death. She testified that appellee voluntarily allowed the box to remain in their parents' home because their mother enjoyed it.

Kathy Elizabeth Gifford, their mother's friend, testified that Mrs. Bellis had told her on numerous occasions that the music box belonged to appellee. Jack Smith also testified that, shortly before she died, Mrs. Bellis told him that he could not have the box because it belonged to appellee.

Appellant offered the testimony of Bridgett Province who had known Mrs. Bellis since 1990. She said that Mrs. Bellis told her at least a dozen times that the music box belonged to appellant. Ruby Reed, who had known Mrs. Bellis all of her life, testified that she had once asked Mrs. Bellis what she was going to do with the box and that Mrs. Bellis told her that it would belong to appellant when she was gone. Ms. Reed said that Mrs. Bellis told her that many times. Edna Gossage, a home health nurse who cared for Mrs. Bellis beginning in 1994, testified that Mrs. Bellis told her many times that she wanted appellant to have the music box when she died.

Appellant testified that she had no knowledge of her father giving the box to appellee. She said that she understood that appellee was supposed to inherit the box, but she said that her father had become disenchanted with appellee because he had moved out of state. Appellant did testify that she recalled her father saying that the music box had been given to appellee, but she said that her father took it back when appellee moved away. She testified that the provision in the will did not refer to the music box, but to a parcel of land their father had given appellee. Appellant testified that she began taking care of their mother in 1991 and that her mother told her sometime around 1996 that she could have the music box. Appellant said that her mother gave her the box during the last year of her life and that she removed the box from the home three days before her mother died.

In rebuttal, appellee testified that he had the right to take the music box any time he wanted. He said that he told his father that he would leave the box in the family home, but he said that he was not obligated to do so. Appellee said that the box was his property and that he left it at home for his mother's enjoyment.

Arkansas law is clear that one seeking to sustain an *inter vivos* gift must prove by clear and convincing evidence that: (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *Jamison v. Estate of Goodlett*, 56 Ark. App. 71, 938 S.W.2d 865 (1997). The test on appeal is not whether there is clear and convincing evidence to support the trial court's findings, but it is whether we can say that the trial court's findings are clearly erroneous. *See Estate of Sabbs v. Cole*, 57 Ark. App. 179, 944 S.W.2d 123 (1997). In our review, we will defer to the trial court's evaluation of the credibility of the witnesses. *See O'Fallon v. O'Fallon*, 341 Ark. 138, 14 S.W.3d 506 (2000).

On appeal, appellant stresses that the music box remained in the family home and contends that the trial court's findings with regard to delivery and the donor's release of dominion and control are clearly erroneous. We do not agree.

The rule with respect to delivery of gifts is less strictly applied to transactions between family members. Even so, delivery must occur for a gift to be effective. *Chalmers v. Chalmers*, 327 Ark. 141, 937 S.W.2d 171 (1997). The gravamen of delivery is a showing

of an act or acts on the part of the putative donor displaying an intention or purpose to part with dominion over the object of the gift and to confer it on some other person. *Bishop v. Bishop*, 60 Ark. App. 164, 961 S.W.2d 770 (1998). The intention to give is not sufficient; there must be a delivery to consummate the gift and pass title. *Gross v. Hoback*, 187 Ark. 20, 58 S.W.2d 202 (1933). In this case, appellee testified that his father gave him the music box and that he had the right to take it away, but that he chose to leave it at home for safekeeping and for his mother's enjoyment. The testimony of the parties' sisters was just as unequivocal that their father had given the box to appellee and that they in turn had also received music boxes. Their father's 1984 will reduced appellee's share of the estate on account of a previous gift, and appellee and the parties' sisters were in agreement that the music box was the gift referred to in the will. The trial court was entitled to credit the testimony of these witnesses that an actual, completed gift was made and to conclude that appellee simply left the music box with his parents, as was his prerogative to do. We cannot say that the court's decision is clearly erroneous. *See, e.g., Carlson, Adm'r v. Carlson*, 224 Ark. 284, 273 S.W.2d 542 (1954). *Accord Prater v. Frazier*, 11 Ark. 249 (1850).

Affirmed.

STROUD, C.J., and HART, J., agree.