Alpha FLETCHER, Appellant

v.

Richard FLETCHER and Erin Fletcher, Appellees.

No. CA 10–701.

Court of Appeals of Arkansas.

Feb. 2, 2011.

James Michael Helms, Ozark, for appellant.

Erik Paul Danielson, Elizabeth A. Danielson, Bentonville, for appellee.

CLIFF HOOFMAN, Judge.

Appellant Alpha Fletcher appeals the trial court's order dismissing her complaint and finding that an absolute gift of the real property in dispute, known as the "Brownsville Store," was made by appellant and her husband at the time, appellee Richard Fletcher, to their daughter, co-appellee Erin Fletcher. On appeal, Alpha Fletcher argues that the trial court erred in finding that the elements of an effective inter vivos gift were established by clear and convincing evidence and asks this court to hold that the property belongs to Alpha and Richard as tenants in common or, in the alternative, to Alpha and Erin as tenants in common. We affirm the trial court's decision.

Alpha Fletcher filed for divorce from her husband, Richard Fletcher, in November 2005. The parties attempted to reconcile shortly thereafter and again began to cohabit. According to Richard's testimony, in December 2005 or early January 2006, he and Alpha began to discuss pur-

chasing the property known as the "Brownsville Store" for their daughter, Erin, as a birthday gift. The property in question consisted of an old store, not currently in operation, as well as the 4.66 acres on which the store was located. Both Alpha and Richard Fletcher testified that they intended to purchase the Brownsville Store for Erin as a family business and that Erin would operate the store, with some participation by the rest of the family. Richard also testified that he and Alpha both went to look at the property with the realtor and that he told the realtor in Alpha's presence that he wanted the property titled in Erin's name. Alpha, however, claimed that she was not present during this conversation with the realtor.

On January 5, 2006, Richard paid $5000 in earnest money and obtained an offer and acceptance agreement on the Brownsville Store that was signed by Erin Fletcher. There is conflicting testimony as to exactly when this agreement was signed by Erin. In Erin's testimony at the trial, she stated that she signed the papers on January 5th at her parents' house, although she testified that she did not read through them and that she did not know what they were. Then around the date of January 12th, Erin and her parents celebrated her birthday at a local restaurant. Erin testified that her parents told her that they were giving her the Brownsville Store at that time and that they both handed her the offer and acceptance agreement for the store and told her "Happy Birthday." They then discussed that the store was going to be run as a family business but that Erin would own it. Erin testified that she gave the papers back to them that evening and that she didn't discuss the property with either of her parents until the real-estate closing on February 16, 2006.

Richard testified that he found out about the closing on the Brownsville Store that day and that he obtained a cashier's check and told Erin to be there. Alpha Fletcher was not at the closing. The funds used to purchase the property came from Richard's account, and the parties are in agreement that this money was marital property. The deed was entered in Erin's name and was filed on February 17, 2006. Erin testified that it was not until right before the closing that she knew that her name would be on the deed. After the closing, Erin stated that she and her mother went out to inspect and clean the property and that they discussed future plans for the business. Erin also testified that from the time she received the deed, her mother was aware that Erin was now the owner of the store and that Alpha did not give Erin the impression that she had any concerns or objections to that fact. Erin testified that she has lived in the store since March 2007 and that her boyfriend and her father live there as well. According to Erin, there is an office next to the store that Richard leases from Erin, and he has funded the account from which improvements to the store have been made. The store is not currently being operated as a business.

Alpha and Richard Fletcher again separated sometime after February 2006, and at the divorce hearing on June 27, 2007, the trial court divided the majority of the Fletchers' property equally, with one-half to each party as tenants in common. There was some discussion at that hearing as to the Brownsville Store, and the trial court stated that there would have to be a separate action to quiet title for this property to be divided pursuant to the divorce, as the legal title is in Erin Fletcher's name. On August 21, 2007, Alpha Fletcher filed a Complaint in Equity, alleging that Erin holds legal title to the Brownsville Store but that Alpha and Richard have an equitable interest in the

property and that Erin holds the property in constructive trust for Alpha and Richard. Both parties filed motions for summary judgment, which were denied by the trial court due to material issues of fact in this case. The trial court stated in its letter opinion that there were numerous conflicts in the testimony as to whether the property was a gift to Erin and as to how much knowledge Alpha had related to this gift; thus, summary judgment would be inappropriate. On March 18, 2010, an order was entered by the trial court dismissing Alpha's complaint with prejudice and finding that an absolute gift of the Brownsville Store was made by Alpha and Richard Fletcher and that neither Alpha nor Richard have any interest in the property. The trial court also found that Erin does not hold the property in constructive trust for her parents.

■ Alpha now appeals from this decision and argues that the trial court erred in finding that the elements of an effective inter vivos gift were established by clear and convincing evidence. A valid inter vivos gift is effective when the following elements are proven by clear and convincing evidence: (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *O'Fallon v. O'Fallon,* 341 Ark. 138, 14 S.W.3d 506 (2000); *Bellis v. Bellis,* 75 Ark.App. 213, 56 S.W.3d 396 (2001); *Estate of Sabbs v. Cole,* 57 Ark. App. 179, 944 S.W.2d 123 (1997). On appeal, the test is not whether there is clear and convincing evidence to support the trial court's finding, but whether this court can say that the trial court's findings are clearly erroneous. *Bellis, supra.* A finding is clearly erroneous when, even though there is evidence to support it, the appel-

late court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *O'Fallon, supra.* On review, we defer to the trial court's evaluation of the credibility of the witnesses. *Id.*

■ In this case, Alpha does not challenge the first element of a valid inter vivos gift; namely, that she and Richard were of sound mind. Alpha first argues that the trial court erred in finding that she knew, understood, and intended the effect of her act in gifting the Brownsville Store to Erin. As Alpha points out, the abstracted testimony shows many inconsistencies in the extent of Alpha's knowledge and intent regarding the gift of the store. Alpha testified both at the divorce hearing and at the trial in the present case that she and Richard were in agreement to purchase the store for Erin as a birthday gift until "six or eight" months later, when Alpha found out that an IRS debt (unrelated to the Brownsville Store property) had not been paid. Alpha stated that she did not want to take the store from her daughter but that she wanted the IRS to be paid and that the money used to purchase the store should have gone to that purpose. However, Alpha also testified at the trial that she never intended the title to the property be put in Erin's name but only intended for Erin to own and run the business. Richard testified, both in his deposition and at the trial, that Alpha was in agreement with the purchase of the property as a gift to Erin and that Alpha was aware that he was going to put the title in Erin's name.

According to Erin's testimony, Alpha seemed to be in agreement with the gift, and both of her parents handed her the offer and acceptance contract at her birthday dinner. Even if Alpha was not necessarily aware that the deed to the property was titled in Erin's name until after the closing, Erin stated that her mother did

not seem to have any objection to this fact, and to the contrary, they both visited the store a number of times before Erin moved in to clean it up and discuss plans for the future. It is well settled that conflicts in the testimony of interested parties are for the trial court to resolve. *Estate of Sabbs, supra.* From Alpha's own testimony, it was not until months after the deed was recorded in Erin's name that Alpha objected to the gift, when she found out about the IRS debt. Thus, it was not clearly erroneous for the trial court to find that Alpha intended to make the gift.

Alpha also argues that there was no actual delivery of the gift by her to Erin. Alpha admits that there was testimony to the effect that she handed the offer and acceptance papers to Erin at her birthday party but argues that even if the trial court gave weight to this testimony, it was only "paperwork" and not the actual deed to the property and that she thus could not have intended to pass title immediately. Alpha further asserts that, if indeed delivery of the gift took place at the birthday party, then Erin failed to accept the gift, due to the fact that she gave the papers back to her parents at that time.

We find the argument that Erin failed to accept the gift to be unpersuasive. The rule with respect to delivery of gifts is less strictly applied between family members. *Bellis, supra.* In *Bellis,* this court found an inter vivos gift to be effective where the donee was given a music box from his father but elected to leave it at his parents' home for safekeeping and for his mother's enjoyment. *Id.* at 217, 56 S.W.3d at 399. Thus, the act of Erin giving back the papers, which she had already signed, would not necessarily defeat her acceptance.

However, we find that the actual delivery of the gift did not occur at the time of the birthday party, but rather at the time the deed was placed in Erin's name. *See Baldridge v. Baldridge,* 100 Ark.App. 148, 265 S.W.3d 146 (2007) (stating that valid delivery of a deed is presumed when the deed is recorded). Alpha argues that because she was not present at the real estate closing, there was no evidence that she delivered the gift to Erin. We disagree. As previously stated, the requirement of delivery is less strictly enforced with respect to family members, and in fact, the "gravamen of delivery is a showing of an act or acts on the part of the putative donor displaying an intention or purpose to part with dominion over the object of the gift and to confer it on some other person." *Bellis,* 75 Ark.App. at 216–17, 56 S.W.3d at 398–99. In this case, delivering the offer and acceptance contract, which had previously been signed by Erin, is evidence of Alpha's intent to part with any future dominion over the property and to confer the gift on Erin. The actual delivery took place when Richard provided the money at the closing, and the deed was recorded in Erin's name. There was no requirement that Alpha be at the closing, and there was evidence that she had already shown her agreement to the gift by her actions at the birthday party. Because marital funds were used to purchase the property, Richard was acting for both of them when the deed was put in Erin's name and delivery occurred.

Therefore, the trial court's finding that the elements of a valid inter vivos gift were met is not clearly erroneous, and we affirm the trial court's decision that Alpha and Richard Fletcher made an absolute gift of the Brownsville Store to Erin Fletcher.

Affirmed.

GLADWIN and BROWN, JJ., agree.