Cite as 2025 Ark. App. 503

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-551

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF RICKEY JOE SHORT, DECEASED | Opinion Delivered October 29, 2025 |
| LISA SHORT<br>APPELLANT/CROSS-APPELLEE | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GPR-20-164] |
| V. | |
| PAUL POST, EXECUTOR OF THE ESTATE OF RICKEY JOE SHORT, DECEASED<br>APPELLEE/CROSS-APPELLEE | HONORABLE GREG MAGNESS, JUDGE |
| REVONA SHORT<br>APPELLEE/CROSS-APPELLANT | AFFIRMED ON DIRECT APPEAL; AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON CROSS-APPEAL |

**N. MARK KLAPPENBACH, Chief Judge**

In this interlocutory appeal, Lisa Short has appealed and Revona Short has cross-appealed several orders entered by the probate division of the Sebastian County Circuit Court in the matter of the estate of Rickey Joe Short, deceased. Lisa is the decedent's daughter, and Revona is the decedent's widow. We affirm on direct appeal and affirm in part and reverse and remand in part on cross-appeal.

The decedent died on August 19, 2018. In October 2020, Lisa filed a petition for probate and appointment of personal representative. She attached a 2014 will that devised the decedent's entire estate to Lisa and one of her siblings, Rickey D. Short, in equal shares.

This will nominated Revona to serve as executor, and if she was unwilling or unable to serve, it nominated Paul Post. In December 2020, Post filed a petition for probate, attaching a will dated February 20, 2008, and a codicil dated August 21, 2015. The 2008 will stated that having made provision for each of his heirs in his trust, he devised each heir one dollar. The will otherwise devised the decedent's entire estate to the Rickey Joe Short Family Trust dated February 20, 2008. Lisa and her brother were among the beneficiaries of the trust, and the trust appointed Post as the successor trustee. The 2008 will nominated Post to serve as executor. The 2015 codicil redeclared the 2008 will with one change. The circuit court ultimately admitted to probate the 2008 will and the 2015 codicil. Post was appointed as executor in April 2021.

In June 2021, Revona filed an election to take against the will. She filed petitions seeking statutory allowances, dower, and homestead rights. In May 2022, Post filed an inventory of the estate that included real property in Barling, Arkansas, and Haskell County, Oklahoma; guns worth $10,000; the balance of a promissory note receivable valued at $283,000; and $100,000 cash from decedent's safe-deposit box. In July 2022, the court entered an order stating that Revona's dower rights were recognized and allowed, but the specific allotment was continued. Both Revona and Lisa filed several motions claiming entitlement to different sums of money, and Lisa moved to substitute Post as executor. Several hearings were held, and the court entered numerous orders in March and April 2023, which are now appealed.

2

Probate cases are reviewed de novo on the record; however, the decision of the circuit court will not be reversed unless it is clearly erroneous. *In re Est. of Smith*, 2024 Ark. App. 275, 689 S.W.3d 438. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, on the entire evidence, with the firm conviction that a mistake has been made. *Id.*

## I. *Removal of Executor*

Lisa argues that the circuit court should have removed Post as executor of the estate because he failed to conduct a timely inventory and because of conflicts of interest. Lisa's arguments as to the inventory are not preserved for appeal. Lisa cites statements her attorney made at a 2021 hearing noting the lack of an inventory and statements from 2022 hearings alleging a lack of information from Post. However, Lisa filed her motion to remove Post as executor in January 2023 solely on the basis of conflicts of interest, and she did not raise any issues with the inventory when the motion was heard in March 2023. Because she did not argue below that Post should be removed due to a late-filed inventory, that argument is not preserved for appeal. *See Smith*, *supra*.

Lisa next argues that Post should have been disqualified due to conflicts of interest created by him serving as executor and attorney for the estate and trustee of the trust. She points to his handling of $100,000 cash that she believes, as discussed in the next point on appeal, should have been distributed to her as a gift rather than designated as part of the estate. She claims that Post's failure to ensure the money was distributed to her as a gift is evidence of improper conduct.

3

A court may remove an estate's personal representative when, among other things, the personal representative becomes disqualified, unsuitable, or incapable of discharging his or her trust, has mismanaged the estate, or has failed to perform any duty imposed by law or by any lawful order of the court. Ark. Code Ann. § 28-48-105(a)(1) (Repl. 2012). The circuit court found that Lisa did not prove any of these grounds for removal. The court further found that the decedent chose to nominate Post, who was highly qualified, to the positions of executor and trustee and that those roles did not have conflicting interests. Instead, the court found that the interests in those roles overlap here because the "executor's primary goal is to maximize the assets remaining after administration of the estate which will flow into the Trust. The trustee's role is to take what assets flow into the Trust from the probate estate and faithfully follow the Trust's instructions concerning those assets."

We agree that Lisa has not proved any grounds for removal. As discussed below, we find no improper conduct in Post's handling of the $100,000. Post's acknowledgement that the characterization of property as estate property benefits Revona over Lisa does not demonstrate a conflict of interest. Nor is a conflict demonstrated by Post's acknowledgement of a note indicating that the decedent intended to gift the $100,000 to Lisa and his son. Post testified that while it appeared the decedent at one point intended to give the money away, he never completed the gift, so the money remained in his name and became property of the estate.

Included in her conflicts argument, Lisa also argues that Post should have been removed because he was a necessary witness, and he could not act as both a witness and a

4

lawyer. While Lisa raised this issue at the hearing on her motion, she did not receive a ruling on it. Accordingly, it is not preserved for appeal. *Woods v. Woods*, 2013 Ark. App. 448.

## II. *$100,000 Cash*

On March 1, 2023, the court ordered that Revona be paid $33,333.33 from the estate as her one-third dower allotment of the $100,000 in the estate's approved inventory of property.[1] Shortly thereafter, Lisa moved to amend the inventory and for immediate payment of gift. She alleged that both Revona and Post were aware that this money was an "intended gift" from the decedent to Lisa and Rickey in equal shares. Lisa argued that the money should be removed from the estate's inventory and paid to her and her brother.

Post testified that Revona brought him $100,000 in cash from a safe-deposit box that the decedent had withdrawn from a certificate of deposit. A bank receipt initialed by the decedent showed that the withdrawal had occurred in June 2018. Revona also gave Post a handwritten note signed by the decedent stating "Rickey D. Short $50,000. Lisa D. Short $50,000." Lisa's attorney argued that due to less stringent standards of delivery between family members, the money had been gifted to Lisa and her brother. Post testified that while it appeared the decedent intended to give the money away, he never did. Furthermore, because the note was not dated or notarized, Post said that it did not amend the will. The circuit court found that the decedent intended to gift the money, but he never released

---

[1] If a person dies leaving a surviving spouse and a child or children, the surviving spouse shall be entitled, as part of dower or curtesy in his or her own right, to one-third part of the personal estate whereof the deceased spouse died seized or possessed. Ark. Code Ann. § 28-11-305 (Repl. 2012).

5

dominion and control over the money. Rather, the decedent was in possession and control of the money until his death, and no inter vivos gift occurred.

On appeal, Lisa first argues that the gift should have been considered completed because strict rules of delivery are relaxed when gifts are made to family members. We disagree. Arkansas law is clear that one seeking to sustain an inter vivos gift must prove by clear and convincing evidence that (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *Bellis v. Bellis*, 75 Ark. App. 213, 56 S.W.3d 396 (2001). The gravamen of delivery is a showing of an act or acts on the part of the putative donor displaying an intention or purpose to part with dominion over the object of the gift and to confer it on some other person. *Bishop v. Bishop*, 60 Ark. App. 164, 961 S.W.2d 770 (1998). Intention to give, by itself, is not sufficient; there must be a delivery to consummate the gift and to pass title. *Id.* The decisive factor is whether the putative donor has the power to reclaim the property. *Id.* Although the rule with respect to delivery of gifts is less strictly applied to transactions between members of a family, delivery must occur for a gift to be effective. *Id.*

We hold that the circuit court was not clearly erroneous in finding no gift occurred because decedent's intention, by itself, was not sufficient. There was no delivery at all, and the money remained in the decedent's safe-deposit box subject to his dominion and control.

6

Lisa next argues that Revona and Post should have completed delivery of the gift and that their failure to do so was a breach of their fiduciary duties. Lisa cites no authority to support this argument, and we find no merit to it. Because no gift was completed, the cash belonged to the decedent at the time of his death and is consequently part of his estate. Neither Revona nor Post had the authority to give away the decedent's money after his death.

III. *Dower Interest in Promissory-Note Payments*

In 2014, the decedent sold real property in Charleston, Arkansas, to Steven and Tara Little as evidenced by a warranty deed, mortgage, and promissory note for the payment of $365,000. The promissory note reflected that the Littles would pay the decedent $1000 a month. Accordingly, the estate's inventory included the balance of the promissory note. Revona requested that she be paid her one-third dower interest in the promissory-note payments—fifty-six monthly payments that had been made since the decedent's death and continuing into the future.[2] No party disputed that she was entitled to one-third of the payments; however, the court questioned whether she was entitled to continuing payments if she did not survive. Revona's attorney argued that her estate is entitled to the payments after she passes. The circuit court's order found that Revona was entitled to a one-third interest in the promissory-note payments from decedent's death "until her death" in the

---

[2]If any person shall die leaving a surviving spouse, the surviving spouse shall be allowed to take the same dower or curtesy in the bonds, bills, notes, books, accounts, and evidences of debt as the surviving spouse would be entitled to take out of the personal property or cash on hand of the deceased spouse. Ark. Code Ann. § 28-11-306 (Repl. 2012).

7

amount of $333.34 per month. The court then made offsets due to the fact that Revona had received the first twenty-six months of payments following the decedent's death.

On cross-appeal, Revona argues that she is entitled to one-third of the promissory-note payments as if they were cash on hand, and her rights are not limited to her life. She cites *Barton v. Wilson*, 116 Ark. 400, 172 S.W. 1032, 1033 (1915), in which the supreme court stated that "[i]t has always been the law of this state that the widow's right to dower in personal property is not lost by her death, but descends to her personal representatives for the benefit of her creditors or heirs, and this is so for the reason that her dower right in personalty is absolute." We are cited no authority, nor does our research reveal any, that alters this principle. Accordingly, we hold that the circuit court's finding limiting Revona's dower interest in the promissory note to her lifetime is clearly erroneous. We reverse for a finding consistent with this opinion.

IV. *Dower Interest in Real Property*

Revona also challenges the court's findings regarding her dower interest in real property located in Barling, Arkansas. This property contains two houses, one of which, known as 300 Chateau, has been occupied by Lisa rent-free since 2004. The other house, known as 406 Chateau, had been rented by two separate parties since 2017. Some of the rental payments had been collected by Revona and some by Lisa. Revona's dower rights in real property are a life estate in one-third of the property. Ark. Code Ann. § 28-11-301(a) (Repl. 2012).

Revona's dower interest in this property was argued at several hearings below. She claimed that the property could not be divided in kind and should be sold. Post filed a petition for authority to sell the property in January 2023. Lisa objected to the property being sold, claiming it was not necessary to administer the estate and noting the decedent's alleged intention that the property be transferred to Lisa and her brother. The court expressed that it was not convinced the property was not divisible and was only inclined to order it sold as a last resort. No decision has been entered on selling the property. Revona also argued that since her dower portion in the real property had not yet been allotted, she was entitled to the payment of rent until that time. She argued that the property had an estimated market rental value of $1700 a month, and she was entitled to one-third of that sum. She also argued that Lisa should be ordered to pay rent for the property she occupied. Revona argued that even if Lisa had an agreement with the decedent during his life allowing her to live on the property, she breached the agreement after his death by failing to pay property taxes on the property.

The circuit court found that Revona was entitled to one-third of the actual rentals collected since the decedent's death, not one-third of the alleged rental value of $1700. The house at 406 Chateau had been rented for twenty-seven months at $700 a month and twelve months at $625 a month. The court also found that Revona was entitled to a one-third interest in all future rentals of 406 Chateau during her life. Due to the rents that Revona had already collected, she owed the estate money for the rentals. The court reserved for future consideration the issue of whether Lisa is entitled to live at 300 Chateau without

9

paying rent as the result of an alleged agreement with her father that she allegedly breached after his death.

On appeal, Revona argues that the court erred in continuing to delay allocating her dower in the real property when it is required by statute to be assigned "as soon as practicable." *See* Ark. Code Ann. § 28-39-301 (Repl. 2012). She notes that more than two years have passed since she petitioned for her dower rights. She argues that the circuit court should order the property sold and award her one-third of the rent for all the property from the date of the decedent's death, including the rent that Lisa should have paid.

While Revona complains that the court did not allocate her dower in prior orders, she did not appeal from those orders. In the order on appeal, the court awarded her an interest in past and future rental payments for 406 Chateau and reserved the issue of rental payments for 300 Chateau. Until curtesy or dower is apportioned, the court shall order such sums to be paid to the surviving spouse out of the rent of the real estate as shall be in proportion to his or her interest in the real estate. Ark. Code Ann. § 28-39-104 (Repl. 2012). When a probate court finds the land cannot be divided in kind to effectuate dower rights, it may order the property rented and the rental divided, or it may order the property sold and the proceeds divided. *In re Est. of Jones*, 317 Ark. 606, 879 S.W.2d 433 (1994). Revona has cited no authority for her argument that she is entitled to all rents that she claims *should* have been collected rather than the rents that *were* collected. *See Less v. Less*, 147 Ark. 432, 437, 227 S.W. 763, 764 (1921) (holding that widow was entitled to rents collected prior to assignment of dower).

10

It is not entirely clear whether the court was awarding an interest in rental payments until dower is apportioned or awarding an interest in rental payments in lieu of dower pursuant to Arkansas Code Annotated section 28-39-305 (Repl. 2012). Although the court referenced section 28-39-104, it also found that Revona was entitled to a one-third interest in future rentals for her life. Nevertheless, Revona's dower interest in the real property remains an open issue due to the court's reservation of the issue of rent for 300 Chateau. At the hearing on Revona's motion, Post noted that there had been no objection to Lisa occupying the property until recently. While Revona included some receipts with her motion, no testimony was taken on Lisa's alleged breach of the agreement to pay taxes and insurance. Accordingly, the court reserved this issue for future consideration. We cannot say that the circuit court's findings are clearly erroneous.

Revona also argues that the court erred in refusing her homestead rights. However, this issue was decided in a 2021 order, from which no timely notice of appeal was filed. Recognizing this, Revona claims that the 2021 order is appealable as an intermediate order pursuant to Rule 2(b) of the Arkansas Rules of Appellate Procedure–Civil, which states that "an appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment." We disagree. Pursuant to Rule 2(a)(12) of the Arkansas Rules of Appellate Procedure–Civil and Arkansas Code Annotated section 28-1-116 (Repl. 2012), virtually all orders in probate cases are appealable at the interlocutory stage. However, orders that "may" be appealed at an interlocutory stage under Rule 2(a), "must" still be appealed within thirty days of their entry. *In re Est. of Stinnett*, 2011 Ark. 278,

11

7, 383 S.W.3d 357, 361. Furthermore, the current appeal is not an appeal from a final order.[3] Accordingly, we cannot address her homestead arguments.

## V. *Payment of Approved Claim*

In March 2023, Revona filed a motion for payment of approved claim. She alleged that Post had approved her previously filed claim requesting reimbursement of $30,590.93 paid by her on debts of the decedent or the estate, and the court should authorize payment of the claim. The court entered an order partially approving the claim in the amount of $14,251.90. The court reserved reimbursement of the remaining expenses in the amount of $16,339.03 for future consideration.

Any claim that is approved by the personal representative may be allowed by the court "at any time without formal hearing." Ark. Code Ann. § 28-50-105(a)(2) (Repl. 2012). A court can "allow [a claim] in whole or in part and classify it or disallow it." Ark. Code Ann. § 28-50-105(a)(4). Revona argues that there is no statutory basis for the court to reserve payment of an approved claim for future consideration. She argues that the entire claim should be ordered to be paid. We hold that Revona has not demonstrated error. The case is ongoing, and the court has discretion as to when it may allow an approved claim.

## VI. *Classification of Guns*

---

[3]We also note that pursuant to Arkansas Code Annotated section 28-1-116(d), an appeal from an order of final distribution brings up for review nearly all prior appealable orders and judgments to which an appellant has filed timely written objections and from which an appeal has not been taken. However, an order of final distribution has not yet been entered in this case.

12

Post testified that he had asked Revona about the decedent's guns, and she said that the decedent had given the guns to her. However, because Revona did not have anything in writing reflecting this alleged gift, Post told her that the guns belonged to the estate. Post recognized that the guns were mentioned in an exhibit attached to the trust, but he did not believe the guns had been placed in the trust because the bill of sale purporting to convey them was not dated, signed, or acknowledged. The circuit court found that the bill of sale properly transferred the guns into the trust, and there was no evidence that the guns were ever taken out of the trust. Accordingly, the court found that the guns were property of the trust, not the estate.

Revona moved for reconsideration, arguing that she was not given notice that the issue of the guns would be argued at the hearing, and she was not given an adequate opportunity to respond, considering she was hospitalized at the time of the hearing. She argued that in July 2018, weeks before he died, the decedent transferred his guns out of the trust when he told her that "[w]hen I am gone, all of these guns are yours." She alleged that this constituted a "gift causa mortis." Her motion was supported by her affidavit. The circuit court denied the motion for reconsideration, finding that even taking Revona's testimony as uncontroverted, the guns were placed into the trust and were never taken out of the trust.

On cross-appeal, Revona argues that the only admissible evidence regarding the removal of the guns from the trust—her affidavit and Post's testimony—show that the guns were gifted to her. We hold that the circuit court was not clearly erroneous in failing to find a gift causa mortis. To establish a gift causa mortis, the evidence must be sufficient to show

13

not only that the person in extremis designated with proper distinctness the thing to be given and the person who is to receive it, but it must establish also that the property was presently to pass and that the intention was carried into effect by an actual or effective delivery. *Newton v. Snyder*, 44 Ark. 42 (1884). In this respect there is no difference between gifts inter vivos and gifts causa mortis. *Id.* The *Newton* court held that a dying man's instructions that his money should go to his wife were testamentary in character and not effective as a gift because it did not appear that the man intended the property should presently pass to his wife; rather, he intended the delivery to occur after his death. *See also Ragan v. Hill*, 72 Ark. 307, 309, 80 S.W. 150, 150 (1904) (holding that a dying man's direction that money was to go to a third party at his death was testamentary in character).

Here, Revona alleged that the decedent told her that "[w]hen I am gone, all of these guns are yours." This direction is testamentary in nature instead of an intention to make an immediate gift to his wife. Accordingly, Revona failed to show that the guns were gifted to her.

Affirmed on direct appeal; affirmed in part and reversed and remanded in part on cross-appeal.

HARRISON and BROWN, JJ., agree.

*Phillip J. Milligan* and *Robert S. Tschiemer*, for appellant/cross-appellee.

*Chronister, Fields & Flake, PLLC*, by: *Rex W. Chronister* and *Megen C. Prewitt*, for appellee/cross-appellee.

*Skinner Law Firm, P.A.*, by: *Jack Skinner*, for appellee/cross-appellant.